NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0083-11T2
            A-0099-11T2
            A-0123-11T2
            A-0124-11T2
            A-0157-11T2
            A-0158-11T2
            A-0159-11T2
            A-0195-11T2
            A-0208-11T2

I/M/O TOWN OF HARRISON AND
FRATERNAL ORDER OF POLICE, LODGE
NO. 116
_____

I/M/O VERNON TOWNSHIP PBA LOCAL 285
CONTRACT
_____

I/M/O BOROUGH OF RAMSEY AND PBA
LOCAL NO. 155
_____

I/M/O TOWNSHIP OF WOODBRIDGE AND
PBA LOCAL 38
_____

I/M/O CITY OF LINDEN AND FMBA LOCAL
NO. 234
_____

I/M/O TOWN OF HARRISON AND FMBA
LOCAL NO. 22
_____

I/M/O TOWN OF HARRISON AND PBA
LOCAL NO. 22
_____

| APPROVED FOR PUBLICATION |
| :---: |
| April 15, 2015 |
| APPELLATE DIVISION |

I/M/O TOWN OF HARRISON AND FMBA
LOCAL NO. 22

————————————————————————

I/M/O CITY OF LINDEN AND FMBA LOCAL 234

————————————————————————————

Argued September 17, 2014 — Decided April 15, 2015

Before Judges Fuentes, Ashrafi and O'Connor.

On appeal from the New Jersey Division of Pension and Benefits.

Paul L. Kleinbaum argued the cause for appellant SOA 22A in A-0083-11 (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Kleinbaum, on the brief).

Markowitz & Richman, attorneys for appellant Town of Harrison and Fraternal Order of Police, Lodge No. 116 in A-0083-11 (Matthew D. Areman, on the brief).

James M. Mets argued the cause for appellant Vernon Township Local 285 Contract in A-0099-11 (Mets Schiro & McGovern, LLP, attorneys; Mr. Mets and Brian J. Manetta, on the brief).

Paul L. Kleinbaum argued the cause for appellant Borough of Ramsay and PBA Local No. 155 in A-0123-11 (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Kleinbaum and Marissa A. McAleer, on the brief).

Paul L. Kleinbaum argued the cause for appellant Township of Woodbridge and PBA Local 38 in A-0124-11 (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Mr. Kleinbaum and Marissa A. McAleer, on the brief).

Daniel J. McCarthy argued the cause for appellant City of Linden and FMBA Local No. 234 in A-0157-11 (John G. Hudak, City attorney, Mr. McCarthy, on the brief).

Craig S. Gumpel argued the cause for appellant FMBA Local No. 234 in A-0157-11 (Mr. Gumpel and Bassel Bakhos, on the brief).

Craig S. Gumpel argued the cause for appellant Town of Harrison and FMBA Local No. 22 in A-0158-11 (Mr. Gumpel and Bassel Bakhos, on the brief).

Paul L. Kleinbaum argued the cause for appellant Town of Harrison and PBA Local No. 22 in A-0159-11 (Zazzali, Fagella, Nowak, Kleinbaum & Freidman, attorneys; Mr. Kleinbaum and Marissa A. McAleer, on the brief).

Javerbaum, Wurgaft, Hicks, Kahn, Wikstorm & Sinns, attorneys for appellants in Town of Harrison and FMBA Local 22 in A-0195-11, join in the briefs of co-appellants.

Craig S. Gumpel argued the cause for appellant City of Linden and FMBA Local 234 in A-0208-11 (Mr. Gumpel and Bassel Bakhos, on the brief).

Eileen S. Den Bleyker, Senior Deputy Attorney General, argued the cause for respondent New Jersey Division of Pensions and Benefits (John J. Hoffman, Acting Attorney General, attorney; Ms. Den Bleyker, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

In this opinion, we decide nine appeals filed by five municipalities and four collective bargaining agents (unions)

that represent police officers and firefighters employed by these municipalities. Although the respective functions of these appellants and the traditional roles they have historically played have cast them as antagonists, they speak with one voice here. These parties have mounted a collective legal challenge to the Acting Director of the Division of Pensions and Benefits' decision to refuse to implement the final determination of the Board of Trustees of the Police and Firemen's Retirement System (PFRS Board of Trustees), which found certain senior officer and longevity pay provisions in the collective bargaining agreements entered into by appellants were creditable compensation for pension purposes under N.J.S.A. 43:16A-1(26)(a).

Thus, to be clear, we do not decide here whether the particular longevity pay provisions in these collective bargaining agreements constitute creditable compensation benefits as defined in N.J.S.A. 43:16A-1(26)(a) or N.J.A.C. 17:4-4.1. The singular legal question before us is this: Does the Acting Director of the Division of Pensions and Benefits have the legal authority to refuse to implement a final decision of the PFRS Board of Trustees because the Acting Director has independently concluded that the decision of the PFRS Board of Trustees is legally incorrect? After reviewing the statutory

scheme established by the Legislature in the Police and Firemen's Retirement System Act, N.J.S.A. 43:16A-1 to -68, and the regulations promulgated by the PFRS Board of Trustees to administer this system, we conclude the answer to this question is unequivocally "no."

The Legislature vested the PFRS Board of Trustees with exclusive authority and "responsibility for the proper operation of the retirement system." N.J.S.A. 43:16A-13(a)(1). Although the Division of Pensions and Benefits has the power and responsibility to "investigate increases in compensation reported for credit which exceed reasonably anticipated annual compensation increases for members of the retirement system[,] . . . cases where a violation of the statute or rules is suspected shall be referred to the Board." N.J.A.C. 17:4-4.1(d) (emphasis added).

The PFRS Board of Trustees has the authority to "question the compensation of any member or retiree to determine its credibility where there is evidence that compensation reported as base salary may include extra compensation." N.J.A.C. 17:4-4.1(b). Only this court has the legal authority to overturn a final decision of the PFRS Board of Trustees in the context of an appeal filed by a member of the PFRS. See N.J.A.C. 17:4-1.7(a); R. 2:2-3(a)(2). The action taken by the Acting Director

in the cases before us lacked statutory or regulatory authority and was therefore ultra vires, without legal force or effect. See Lourdes Med. Ctr. v. Bd. of Review, 197 N.J. 339, 378 (2009).

We start our factual recitation with a brief overview of the longevity salary increase provisions in the various collective bargaining agreements negotiated by the municipalities and unions that have appealed the Acting Director's actions.

I

Town of Harrison

We have consolidated the following appeals affecting the Town of Harrison: I/M/O Town of Harrison and PBA Local No. 22, Docket No. A-0159-11; I/M/O Town of Harrison and FOP, Lodge No. 116, Docket No. A-0083-11; I/M/O Town of Harrison and FMBA Local No. 22, Docket No. A-0158-11; and I/M/O Town of Harrison and FMBA Local No. 22, PBA Local No. 22, and SOA 22A, Docket No. A-0195-11. The Fraternal Order of Police, Lodge No. 116 (FOP Lodge 116), Police Benevolent Association, Local No. 22 (PBA Local 22), and Firemen's Mutual Benevolent Association, Local No. 22 (FMBA Local 22) filed briefs in support of these appeals and join in each other's arguments. The Town of Harrison has

also joined in these appeals challenging the action taken by the Acting Director.

## Police Officers

FOP Lodge 116 identifies itself as "a labor organization and representative within the meaning of N.J.S.A. 34:13A-3(e)." This appellant represents all uniformed officers in the Harrison Police Department holding the ranks of Sergeant, Lieutenant and Captain, for purposes of collective bargaining. In 2007, FOP Lodge 116 was certified as the exclusive bargaining agent for all superior officers employed by Harrison. FOP Lodge 116 entered into a collective bargaining agreement with Harrison, which was valid from January 1, 2007 through December 31, 2011. Before 2007, PBA Local 22 represented police officers holding a supervisory rank.

Since 1999, the two principal bargaining agents representing superior officers in the Harrison Police Department[1] negotiated a provision in their collective bargaining agreements allowing for increases to officers' base salary contingent upon their years of service with the Town. This longevity clause provides as follows:

---

[1] PBA Local 22 represented these officers from 1999 to 2007; FOP Lodge 116 was the recognized bargaining agent from January 1, 2007 through December 31, 2011.

ARTICLE XVIII

LONGEVITY

Section 1:   In addition to wages, members shall receive longevity as follows:

After three years:          Two (2%) percent

After five years:          Four (4%) percent

After ten years:          Six (6%) percent

After fifteen years:       Eight (8%) percent

After twenty years:       Ten (10%) percent

Start of twenty-three years: Twelve (12%) percent

Start of twenty-four years: Fourteen (14%) percent

Section 2: Longevity will be paid in weekly salaries.

This precise language was adopted in the Article XV-Longevity provision of the Harrison salary ordinance to mirror the provisions contained in the parties' collective negotiations agreement.   Article XVIII was included, verbatim, in the contract between Harrison and PBA Local 22, effective January 1, 1999 through December 31, 2001.   By letter dated June 15, 2000, Regina M. Trauner, the secretary of the PFRS Board of Trustees at the time, formally advised Harrison that the PFRS Board of Trustees found the "stipend referred to in Article XIX Workday

of the agreement" was "not considered creditable for pension purposes."

Because Trauner did not mention the longevity provision in her June 15, 2000 letter, Harrison and FOP Lodge 116 inferred from this absence of criticism that the PFRS Board of Trustees had tacitly approved the longevity provision.[2] According to FOP Lodge 116, it and Harrison "continued to negotiate successor agreements" based on this "tacit approval of the negotiated longevity provision[.]" Article XVIII remained in the 2007-2011 collective bargaining agreement between FOP Lodge 116 and Harrison.

By letter dated January 21, 2011, Michael R. Czyzyk, the Division's Supervisor, External Audits, informed Harrison's Chief Financial Officer (CFO) that the Division had determined "that the longevity compensation, as a component of the ordinance, is not creditable in its entirety for pension purposes as per N.J.A.C. 17:2-4.1."[3]

---

[2]  We must point out that prudence dictates that Harrison should have been more proactive. Under these circumstances, Harrison should have obtained a formal statement from the PFRS Board of Trustees confirming it had approved the specific longevity provision.

[3]  The relevant section of this regulation states:

> The compensation of a member subject to pension and group life insurance
> (continued)

A-0083-11T2

As explained by External Audit Supervisor Czyzyk, the Division found

> that the longevity increment from 10% to 12% in the 23rd year of service and the longevity increment from 12% to 14% in the 24[th] year of service incrementally excessive compared to prior increases. Also, granting such an increase in the 23rd and 24th year of an employee's service is clearly being awarded in order to enhance that member's retirement benefit.

Of particular relevance here, the Division also explained to Harrison's CFO that this determination was merely an interim step, subject to further scrutiny if the employees affected by it exercised their rights to appeal:

> The Division will not implement this Administrative determination until 90-days have elapsed from the date of this letter to permit any members who wish to appeal adequate time to do so. Please provide a copy of this letter to all employees and retirees who are affected by this

_____

(continued)
> contributions and creditable for retirement and death benefits in the system shall be limited to base salary and shall not include extra compensation. Forms of compensation that have been identified as extra compensation include, but are not limited to:
>
> . . . .
>
> Increments or adjustments in recognition of the member's forthcoming retirement[.]
>
> [N.J.A.C. 17:2-4.1(a)(10).]

> determination. Any affected member who disagrees with the determination may appeal to the PERS Board of Trustees by writing a letter setting forth the reasons thereof. The appeal should be directed to the attention of Kathleen Coates, Board Secretary to the PERS Board of Trustees, at the address on the letterhead.

Despite references in the letter to the right to appeal to the Public Employee Retirement System (PERS) Board of Trustees, by letters dated March 25, 2011 and August 16, 2002, the Division acknowledged the PFRS Board of Trustees' jurisdiction to hear appeals from its administrative determination. In fact, in his March 25, 2011 letter, Czyzyk acknowledged that "Harrison [Town] employees enrolled in the PFRS have filed appeals after receiving the Division's January 21, 2011 correspondence." Thus, "[i]n order to provide both the PERS and PFRS Trustees with a complete record of the matter," Czyzyk requested Harrison to

> please forward to my attention . . . all contracts, agreements, including addendums and sidebar agreements currently in-force as well as individual agreements and ordinances for all individuals or groups of individuals affected by a longevity provision as described in the Division's January 21, 2011 correspondence.

> (Emphasis added).[4]

---

[4] We have highlighted the word "correspondence" to distinguish it from the Acting Director's subsequent characterization of the Division's action as a "final administrative determination"
(continued)

In accordance with the instructions in Czyzyk's January 21, 2011 letter, on April 12, 2011, FOP Lodge 116 appealed the Division's "administrative determination" to the PFRS Board of Trustees. On April 15, 2011, the Secretary to the PFRS Board of Trustees informed the parties that the appeal would be considered on May 2, 2011. By letter dated May 5, 2011, the PFRS Board of Trustees issued a final decision, which approved the longevity schedule and rejected the Division's "administrative determination" reflected in Czyzyk's January 21, 2011 letter. The letter, signed by the PFRS Board of Trustees' Secretary, Wendy Jamison, stated:

> Based on a review of the pertinent documents, the PFRS Board voted to approve the longevity schedule as cited in Article XVIII of the current contract dated January 1, 2007 to December 31, 2011.
>
> Consequently, there will be no change in any of the retiree's monthly PFRS retirement allowances.

Nearly three months after the PFRS Board of Trustees' final decision, Florence J. Sheppard, the Division's then Acting Director, sent a letter dated July 27, 2011, addressed to the attorneys representing the affected parties. After reinstating

---

(continued)
legally competent to supersede the PFRS Board of Trustees' conflicting determination, and subject to appellate review by this court under Rule 2:2-3(a)(2) as a final agency decision.

the analysis reflected in Czyzyk's January 21, 2011 letter, Sheppard informed the parties that "the Division will not implement the decision of the Board to permit such increases as creditable for pension retirement credit." Sheppard concluded her letter by informing the recipients, "[y]ou have the right to appeal this final administrative action to the Superior Court of New Jersey, Appellate Division, within 45 days of the date of this letter in accordance with the <u>Rules Governing the Courts of the State of New Jersey</u>."

FOP Lodge 116, PBA Local 22, and the Town of Harrison have appealed to this court, arguing the Acting Director did not have the legal authority to refuse to implement a final decision of the PFRS Board. They seek an order from this court directing the Division to implement the PFRS Board of Trustees' decision.

<u>Firefighters</u>

Harrison FMBA Local 22 describes itself as "the exclusive bargaining representative for uniformed employees in the Fire Department of the Town of Harrison below the rank of Chief." FMBA Local 22 and Harrison entered into a collective bargaining agreement effective January 1, 2007 through December 31, 2011. Article XX of that agreement contains a longevity provision identical to the provision in the contract between Harrison and

the bargaining agents that represented the police officers described <u>supra</u>.

According to FMBA Local 22, Harrison has had a longevity program since at least 1976. In a certification submitted in this appeal, Harrison Fire Department Battalion Chief and former FMBA president Michael Greene describes the history of longevity pay in the FMBA's contracts is as follows:

> From 1976 to 1983, all Town employees received the following longevity:
>
> After five years          Two (2%) percent
> After ten years           Four (4%) percent
> After fifteen years       Six (6%) percent
> After twenty years        Eight (8%) percent
>
>     . . . .
>
> In 1984, the longevity provision of the FMBA agreement was as follows:
>
> After three (3) years     One (1%) percent
> After five (5) years      Three (3%) percent
> After ten (10) years      Five (5%) percent
> After fifteen (15) years  Seven (7%) percent
> After twenty-two (22) years  Nine (9%) percent
>
>     . . . .
>
> In 1985 . . . :
>
> After three (3) years     Two (2%) percent
> After five (5) years      Four (4%) percent
> After ten (10) years      Six (6%) percent
> After fifteen (15) years  Eight (8%) percent

14                                              A-0083-11T2

After twenty-two (22) years     Ten     (10%)
percent.[5]

The longevity schedule increased throughout the years until about January 1, 1996, when the current formula was adopted. According to Greene, "[t]his formula for longevity is the <u>same as the current longevity schedule</u> and has been in at least five (5) collective negotiations agreements, including the current one which expires December 31, 2011." Stated differently, these longevity provisions have been considered creditable compensation for pension purposes, allowing retired firefighters to receive pension benefits inclusive of longevity since 1976.

FMBA Local 22 asserts that the Division has reviewed and acquiesced to the creditability for pension purposes of these same longevity provisions on multiple prior occasions. The record before us contains a letter dated August 16, 2002, written by External Audit Supervisor Czyzyk to the Harrison Town Clerk. Czyzyk informed the Clerk in this letter that the audit section of the Division had determined that several provisions of the FMBA Local 22 contract applicable from January 1, 1999 through December 31, 2002, including the longevity provision, were "in violation" of the creditable compensation provision, <u>N.J.A.C.</u> 17:4-4.1.

---

[5]  The Senior Deputy Attorney General representing the Division in this appeal did not object to this exhibit.

The record before us concerning how this 2002 notice of "violation" from Czyzyk was addressed and resolved by Harrison and FMBA Local 22 is murky at best. The paper trail in support of appellants' position consists of a series of contemporaneous correspondence from the attorneys representing both FMBA Local 22 and Harrison memorializing telephone discussions and agreements allegedly reached with a Division representative named JoAnn E. Martin. The three outstanding issues were identified by the attorney representing FMBA Local 22 in his October 1, 2002 letter to the attorney representing Harrison:

> 1.  Fire Sub-Code Official Stipend.  A letter from the Town clarifying the actual title would resolve the issue.
>
> 2.  Execution of Side Agreement clarifying holiday pay in base pay would resolve the issue.
>
> 3.  <u>Longevity issue sent to Committee on Creditable Compensation for review.</u>
>
> (Emphasis added).

The record does not contain a direct indication that Harrison reached an agreement with the Division addressing the longevity issue highlighted in Item 3 above. The record is equally barren of any correspondence or notice of violation from the Division on the longevity issue during the nine-year period from 2002 to 2011. However, whether Harrison and FMBA Local 22 reached an agreement with the Division concerning the violation

16

referred to by Czyzyk in 2002 is not relevant to the question before us. As we made clear in our prefatory remarks, this appeal is limited to a single legal question: whether the Director of the Division of Pensions and Benefits has the legal authority to refuse to implement a final decision reached by the PFRS Board of Trustees.

On January 21, 2011, the same date Czyzyk announced his decision to FOP Lodge 116 regarding the longevity provisions in the agreement with the police officers, he communicated the same determination that FMBA Local 22's longevity provision was not creditable for pension purposes under N.J.A.C. 17:2-4.1. On April 18, 2011, FMBA Local 22 appealed the Division's January 21, 2011 "administrative determination" to the PFRS Board of Trustees. On May 2, 2011, the PFRS Board of Trustees rejected the Division's determination and approved the longevity schedule cited in the collective bargaining agreement.

Consistent with the position she took with respect to the longevity provision in the collective bargaining agreement involving the police officers, the Acting Director announced the Division would not implement the decision of the PFRS Board of Trustees with respect to the longevity provisions in the agreement Harrison entered into with FMBA Local 22. In fact,

the Acting Director used nearly identical language in the letter affecting the firefighters.

On August 5, 2011, the attorneys representing FMBA Local 22 wrote to the Acting Director to express their disagreement with her decision to disregard the final determination of the PFRS Board of Trustees.  The firefighters also disagreed that her unprecedented, unilateral decision was reviewable as of right by this court under Rule 2:2-3(a)(2).  The Acting Director did not respond to FMBA Local 22's letter.  FMBA Local 22 now appeals to this court seeking the same relief sought by the Town of Harrison and the Unions representing the police officers.

II

City of Linden

The appeals involving Linden relate to the collective bargaining agreement Linden entered into with FMBA Local 234 effective January 1, 2005.  FMBA Local 234 and Linden also have a Memorandum of Understanding (MOU) covering the period from January 1, 2009 through December 31, 2013.  The first provision at issue in this case involves Article VIII Section D of the parties' now expired collective bargaining agreement:

> D.   Senior Fire Officer Differential
>
> Effective January 1, 2000, Fire officers who
> have completed their twentieth (20th) year
> of service with the City of Linden shall
> receive a Senior Fire Officer Differential

in the amount of $1,500.00 per year to be
paid in equal bi-weekly installments.

Article VIII of the agreement, effective January 1, 2009 through December 31, 2013,[6] also includes the following provision:

C.    Senior Deputy Chief Differential

Effective January 1, 2010, Senior Officer
Pay shall be as follows:

Beginning of 14th year of service: $1,000.00
Beginning of 21st year of service: $1,750.00
Beginning of 24th year of service: $2,250.00
Said pay shall be non-cumulative and paid in
equal bi-weekly installments.

By letters dated January 15, 2010 and March 18, 2010, Division auditor Jean C. Monahan began reviewing the collective bargaining agreement Linden had entered into with FMBA Local 234, effective January 1, 2005 through December 31, 2008. Monahan asked Linden's Labor Relations Specialist, attorney Allan C. Roth, whether "compensation associated" with the Senior Fire Officer Differential reflected in Article VIII, Section C was "reported as creditable salary for pension purposes[.]" Neither Roth nor any other representative of Linden responded to Monahan's requests for "clarification" of the compensation

---

[6]    This exact language was also included in paragraph 18 of an MOU entered into before the 2009-2013 agreement was successfully negotiated.

awarded to firefighters under this provision of the collective bargaining agreement.

On October 19, 2010, Supervisor of External Audits Czyzyk wrote Roth, in his capacity as Linden's legal representative, advising him that "[a]fter careful review" of the collective bargaining agreement and the MOU, the Division had made "an administrative determination" that these agreements contained provisions "that may be in violation of the statutes and regulations which set forth those forms of compensation that are creditable for pension purposes. N.J.A.C. 17:4-4.1(a)(1) and (2)." (Emphasis added). Czyzyk specifically noted that "[t]he Division finds that senior officer compensation payable in the 20th, 21st and 24th year of service is extra compensation received in anticipation of retirement and in violation of N.J.A.C. 17:4-4.1(a)1 and 2(ix) and (xiii)."[7]

As he did in his correspondence with the Town of Harrison, Czyzyk concluded his letter to Roth with the following statement:

> The Division will not implement this Administrative determination until 90 days have elapsed from the date of this letter to permit any members who wish to appeal

---

[7] The October 19, 2010 letter from Czyzyk contains a comprehensive review of these two labor agreements. Czyzyk raises other questions and concerns in this letter that are not germane to the issues raised in this appeal.

adequate time to do so.  Please provide a copy of this letter to all employees and retirees who are affected by this determination.  Any affected member who disagrees with the determination may appeal to the PFRS Board of Trustees by writing a letter setting forth the reasons thereof. . . .

<u>You should not make any adjustments to the creditable salary you currently report on these members until the end of the 90-day appeal period</u>. . . .

<u>At the end of the 90-day period, if no outstanding appeals are pending or if no action was taken by the PFRS Board of Trustees, the Division will instruct you to change the creditable salary reported to conform to this determination</u>. . . .

(Emphasis added).

Linden sought to appeal the Division's October 19, 2010 determination in a letter addressed to Czyzyk dated January 17, 2011.  Linden also included in this letter-appeal the "additional information" Czyzyk had requested nearly two months earlier.  In his capacity as Linden's Labor Relations Specialist counsel, Roth claimed that the Senior Deputy Chief Differential was negotiated after the agreement had been submitted to arbitration.  According to Roth, the arbitrator "awarded senior officer pay, in lieu of increasing or re-establishing longevity."  Thus, under the collective bargaining agreements:

[N]o employee hired after December 31, 1974 was entitled to receive longevity.  However, with the arbitrator's award of compensation

21

entitled "senior officer pay" all uniformed fire department employees are entitled to [this] pay, which was and is now paid as part of salary through the City's bi-weekly pay system. Therefore, the City and the FMBAs believe the pay to be pensionable and in compliance with N.J.A.C. 4A:17-4:4.1(iv).

On March 18, 2011, FMBA Local 234 submitted a letter in support of Linden's position.

On May 2, 2011, the PFRS Board of Trustees reversed the Division's administrative determination and found the senior officer pay differentials to be creditable compensation for pension purposes. Once again, the Division's Acting Director refused to implement the PFRS Board of Trustees' final decision. In her letter dated July 27, 2011, the Acting Director again found the "individual salary adjustments" were "granted primarily in anticipation of the member's retirement," in violation of N.J.S.A. 43:16A-1(26)(a).

As was the case with respect to the Town of Harrison, FMBA Local 234 objected to the Acting Director's unilateral determination. The Acting Director did not respond. FMBA Local 234 filed this appeal thereafter.

III

Vernon Township

Vernon Township entered into a collective negotiations agreement (CNA) with PBA Local 285 effective January 1, 2008

through December 31, 2011.  The disputed provisions at issue in this appeal are found in Article XVII of that agreement, which provides as follows:

> A.   The salaries from Employees covered by this AGREEMENT shall be as set forth on Schedule A annexed.
>
> B.   The differential between ranks shall be ten (10%) percent above the prior grade.
>
> . . . .
>
> E. An Officer having twenty (20) years of service within the meaning of the Police and Fire Retirement System or having fifteen (15) years of service with Vernon Township and ten (10) years of Law Enforcement experience shall be elevated one-half (1/2) the distance in pay to the next higher rank, and this will be added to and become part of the Officer's base salary.

On May 20, 2010, Czyzyk wrote a letter to Vernon's Personnel Director, Pennie Roland, advising her that

> [a]fter careful review of the PBA Local #285 Contract for the period January 1, 2008 through December 31, 2011 . . . the Division has made an administrative determination that the . . . contract contains a provision that is causing monies to be included in the base salary reported to the Division that is not creditable for pension purposes.

After specifically identifying "Article XVII: Salaries: Paragraph E" as the problematic provision, Czyzyk explained that the Division "considers this to be compensation given to a member in anticipation of retirement."  Czyzyk concluded his

letter to Vernon's Personnel Director Roland with the same admonition he included in his communications with the Town of Harrison and the City of Linden. (See supra, Part I, at 9-11; and Part II, at 20-21). In the interest of clarity, Czyzyk concluded his letter by emphasizing the following three points: (1) the Division would not implement this action for ninety days to permit employees adequate time to appeal to the PFRS Board of Trustees; (2) the Township should not make any adjustment to the creditable salary until the end of the appeal period; and (3) the Division would instruct the Township how to implement its determination only "if no outstanding appeals [were] pending or if no action was taken by the PFRS Board of Trustees." (Emphasis added).

Following the Division's instructions, PBA Local 285 appealed the May 20, 2010 "administrative determination" to the PFRS Board of Trustees on August 11, 2010. After an initial postponement to consider additional information submitted by PBA Local 285 concerning the financial impact of the terms of the contract, the PFRS Board of Trustees met on January 10, 2011, and formally determined the salary increases provided under Article XVII, Paragraph E of the CNA were compensable for pension purposes. The PFRS Board of Trustees communicated its decision in a letter dated January 12, 2011, from Wendy Jamison,

24                                                        A-0083-11T2

Secretary to the PFRS Board of Trustees, to the attorneys representing PBA Local 285.

After framing the legal question presented to the PFRS Board of Trustees by PBA Local 285 on behalf of the members affected by the Division's initial administrative determination, Secretary Jamison wrote:

> The Board voted to approve your request to include Paragraph E above as creditable compensation in the PFRS. The Board considered the salary as an additional pay step of the salary scale as denoted on schedule A. A copy of this letter is being sent to the Internal and External Audit Sections of the Division to implement the Board's decision.[8]

More than seven months after the PFRS Board of Trustees' decision, Acting Director Florence Sheppard sent a letter dated July 27, 2011, to the attorneys representing PBA Local 285 advising them that "the Division will not implement the decision of the Board to permit such increases as creditable for pension retirement credit." The letter reflects that the Acting Director reached this decision after conducting a de novo review of the evidence presented to the PFRS Board of Trustees and engaging in her own independent legal analysis of the relevant statutory and regulatory provisions. The Acting Director did

---

[8] PBA Local 285 included in its Appendix a copy of Secretary Jamison's January 12, 2011 letter, which lists Czyzyk as receiving a copy of this correspondence.

not cite any legal authority to support her decision to refuse to implement the decision of the PFRS Board of Trustees.

Consistent with the approach she employed in the cases involving the Town of Harrison and the City of Linden, the Acting Director concluded her letter by informing PBA Local 285 that: "You have the right, if you wish, to appeal this final administrative action to the Superior Court of New Jersey, Appellate Division . . . in accordance with the Rules Governing the Courts of the State of New Jersey."

By letter dated August 8, 2011, the attorneys representing PBA Local 285 asserted that "[t]he Director of the Division of Pensions and Benefits does not have the authority to determine what is and is not creditable salary and to ignore decisions of the PFRS Board."  Citing N.J.S.A. 43:16A-1.2 and N.J.A.C. 17:1-1.1(g), PBA Local 285 argued the Director's role was limited to reviewing the positions covered by the retirement system and recommending to the PFRS Board of Trustees whether they should remain a covered position for pension purposes.  Counsel concluded his letter to the Acting Director with the following request:

> We also respectfully request that, while this dispute is pending, you suspend implementation of your July 27, 2011 determination for any PBA Local 285 collective negotiations unit member who is receiving a pension benefit base[d] on the

A-0083-11T2

inclusion of the disputed contractual clause. To reduce their pension benefits at this time, especially in light of recent legislation that will all but eliminate any pension COLA [Cost of Living Adjustment], will [wreak] havoc on the household budgets of these retirees who relied in good faith on the Division's calculation of their pension benefit.

Thank [you] for your attention to this matter. We look forward to your response.

The Acting Director did not respond to this letter. PBA Local 285 filed its Notice of Appeal with this court on August 31, 2011.

IV

Borough of Ramsey

The Borough of Ramsey entered into a collective negotiations agreement (CNA) with PBA Local 155 covering the period of time from January 1, 2007 through December 31, 2011. The CNA included a provision entitled "Salary Schedule" that provided as follows:

Senior Officer Pay status is a new category. After completing 23 years of service as a police officer, top step patrolmen will be placed in senior officer pay status. Annual salary for those in senior officer pay status will be salary that is midway between the salary for an 8th step patrolman and a sergeant.

The appellate record includes a Ramsey Police Department Proposed Salary Schedule from 2003 through 2006. Based on this

27

salary schedule, "midway between the salary for an 8th step patrolman and a sergeant" in 2002 would constitute an annual salary differential of approximately $3851.[9] The Senior Officer Pay differential in 2006 was approximately $4419.[10] Senior Officer Pay status was a new category, available only to those police officers who had completed twenty-three years of service; a top step patrol-officer was placed in senior officer pay status only after reaching this career milestone.

The case involving PBA Local 155 and Ramsey followed the same procedural pattern we have discussed at length in this opinion in Part I involving Harrison, Part II involving Linden, and Part III involving Vernon. By letter dated October 15, 2004, Czyzyk advised Ramsey Borough Administrator Nicholas C. Sanos that the Division viewed the "Senior Officer Pay" status "as a salary adjustment granted primarily in anticipation of the member's retirement." As such, these salary increases were not

---

[9] This Salary Schedule shows that in 2002, an annual salary for an 8th step patrol-officer was $81,500.87. A sergeant in the same level of seniority shows an annual salary in 2002 of $89,203.47. The "midway" salary differential between these two figures is approximately $3851.

[10] The differential would increase commensurate with the annual salary increases. Based on this Salary Schedule, in 2006 an 8th step patrol-officer's annual salary was $93,525; a sergeant's annual salary with the same level of seniority was $102,364. The "midway" salary differential between these two figures is approximately $4419.

creditable for pension purposes under N.J.S.A. 43:16A-1 and N.J.A.C. 17:4-4.1.

As he did with respect to the other three municipalities, Czyzyk informed Borough Administrator Sanos that: (1) the Division would not implement this action for ninety days to permit employees adequate time to appeal to the PFRS Board of Trustees; (2) Ramsey should not make any adjustment to the creditable salary until the end of the appeal period; and (3) the Division would instruct Ramsey how to implement its determination only if no outstanding appeals were pending or if the PFRS Board of Trustees had not decided otherwise.

PBA Local 155 appealed the Division's administrative action to the PFRS Board of Trustees. By letter dated July 12, 2011, PFRS Board of Trustees Secretary Wendy Jamison advised the attorneys representing PBA Local 155 that the Board had ruled in their client's favor:

> Based on a review of the pertinent documents, the PFRS Board voted to approve the salary schedule as cited in the PBA Local No. 155 contract, Article III and Appendix I dated January 1, 2007 to December 31, 2011. The Board found the pay was an additional salary step as denoted in the salary guideline.
>
> Consequently, there will be no change in any of the retiree's monthly PRFS retirement allowances.

The PFRS Board of Trustees' decision in the appeal filed by PBA Local 155 triggered a considerably faster,[11] albeit familiar reaction from Acting Director Sheppard. In a letter dated July 27, 2011, Sheppard engaged in the same de novo review of the record presented to the PFRS Board of Trustees and reached the opposite legal conclusion. In the Acting Director's opinion "all of the senior officer pay violates the provisions of the statute and regulation since the payments are clearly being awarded in order to enhance the member's retirement benefit 'upon attainment of a specified number of years of service.'" Once again, Sheppard concluded her letter by apprising those affected by her decision that they had the right "to appeal this final administrative action" to this court.

By letter dated August 5, 2011, the attorney representing PBA Local 155 asked Sheppard the following question:

> Please advise me on what authority your determination not to enforce the Board's decisions is considered the "final administrative action" in light of the

---

[11] Sheppard waited three months to communicate her unwillingness to implement the PFRS Board of Trustees' decision in the case involving police officers and firefighters from the Town of Harrison; she took nearly two months to apprise the affected police officers in the City of Linden, and more than seven months to inform the affected police officers of the Township of Vernon. By contrast, in the case involving police officers from the Borough of Ramsey, Sheppard sent her refusal letter just two weeks after the PFRS Board of Trustees' decision.

existing Board of Trustees' decisions which have not been appealed to my knowledge.

Sheppard did not respond. On September 6, 2011, PBA Local 155 filed a Notice of Appeal to this court seeking a judicial declaration that the Director of the Division of Pensions and Benefits does not have the legal authority to refuse to implement a final decision of the PFRS Board of Trustees merely because the Director disagrees with the Board's decision. Consequently, Sheppard's decision refusing to implement the PFRS Board of Trustees' decision is ultra vires, without legal force or effect.

V

Township of Woodbridge

Woodbridge entered into a collective bargaining agreement with PBA Local 38 covering the period from January 1, 2009 through December 31, 2011. Article V of this agreement is denoted "Salaries." Paragraph B in Article V provides for a "Senior Officer Differential." This provision states:

> B. Senior Officer Differential - Employees having completed twenty-two (22) years of service shall be entitled to a senior officer differential benefit. The benefit shall be an increase in the base pay rate by five and one-half percent (5.5%) and is reflected in the senior officers' base rate (1st Class)[.]

Article VII is denoted "Longevity," and provides as follows:

A. The Township agrees to pay as a fringe benefit the following longevity payments:

2.5% after the start of 6th and through completion of 10th year or [sic] service;

4% after start of 11th and through completion of 14th year of service;

5.5% after start of 15th and through completion of 20th year of service;

7% at start of 21st year through completion of 22nd year of service;

9.5% at start of 23rd year of service and each year thereafter.

By letter dated January 20, 2011, Czyzyk advised Woodbridge Township Chief Financial Officer (CFO) Richard Cahill that,

> the Division has made an administrative determination that the agreement executed between the Township and the Woodbridge Policemen's Benevolent Association, Local No. 38 contains provisions that may be causing monies to be included in the base salary reported to the Division that are not creditable for pension purposes as per N.J.A.C. 17:4-4.1(a)(1) and (2).

After quoting from the regulatory standard, Czyzyk cited Article V, Paragraph B "Salaries-Senior Officer Differential" from the agreement and stated, "[t]he Division finds that senior officer compensation payable in the 22nd year of service is extra compensation received in anticipation of retirement and in violation of N.J.A.C. 17:4-4.1(a)(1) and (2)(ix) and (xiii)."

With respect to Article VII, Paragraph A "Longevity," Czyzyk indicated that:

> The Division finds that the longevity increment from 7% to 9.5% in the 23rd year of service incrementally excessive compared to prior increases. Also, granting such an increase in the 23rd year of an Officer's service is clearly being awarded in order to enhance that member's retirement benefit.

As he did when he sent similar letters to the other four municipalities involved in this appeal, Czyzyk concluded by informing Woodbridge CEO Cahill that: (1) the Division would not implement this action for ninety days to permit employees adequate time to appeal to the PFRS Board of Trustees; (2) Woodbridge should not make any adjustment to the creditable salary until the end of the appeal period; and (3) the Division would instruct Woodbridge how to implement its determination only if no outstanding appeals were pending or if the PFRS Board of Trustees had not decided otherwise.

PBA Local 38 followed Czyzyk's instructions and appealed the Division's January 20, 2011 administrative determination to the PFRS Board of Trustees. By letter dated May 5, 2011, PFRS Board Secretary Jamison informed the attorneys representing PBA Local 38 that:

> Based on a review of the pertinent documents, the PFRS Board voted to approve the senior officer differential as cited in Article V and the longevity schedule as

A-0083-11T2

cited in Article VII of the [collective bargaining] contract.

Consequently, there will be no change in any of the retiree's monthly PFRS retirement allowances.[12]

By letter dated July 27, 2011,[13] Sheppard informed the attorneys representing PBA Local 38 that "the Division will not implement the decision of the Board to permit such increases as creditable for pension retirement credit." Once again, the Acting Director reached this conclusion after engaging in a de novo review of the evidence presented by PBA Local 38 to the PFRS Board of Trustees. Finally, as she had done in the cases involving the other four municipalities in this appeal, the Acting Director advised PBA Local 38 that it had "45 days [from] the date of this letter" to appeal her "final administrative action" to this court "in accordance with the <u>Rules Governing the Courts of the State of New Jersey</u>."

By the time the Acting Director made this decision, the law firm representing PBA Local 38 also represented the Town of Harrison and PBA Local 22, and the Borough of Ramsey and PBA

_____

[12] As she had done in her prior correspondence, Jamison copied Czyzyk in this letter.

[13] The Acting Director's letter was dated nearly three months after the PFRS Board of Trustees communicated its final decision to PBA Local 38 and to the Division's Supervisor of External Audits.

Local 155. By letter dated August 5, 2011, the attorney for PBA Local 38 asked Sheppard the same question he had asked on behalf of PBA Local 155:

> Please advise me on what authority your determination not to enforce the Board's decisions is considered the "final administrative action" in light of the existing Board of Trustees' decisions which have not been appealed to my knowledge.

Once again, the Acting Director did not respond. PBA Local 38 filed its appeal to this court on September 6, 2011, seeking a judicial declaration that the Acting Director's action in refusing to implement a final decision of the PFRS Board of Trustees is ultra vires, without legal force or effect.

VI

Legal Analysis

All appellants argue the Acting Director did not have the authority to act unilaterally and refuse to implement a final decision reached by the PFRS Board of Trustees. We agree. Under the statutory and regulatory scheme established to administer this pension system, the PFRS Board of Trustees is the only administrative body authorized to make a final administrative determination regarding what can be considered "creditable compensation" for pension benefits under N.J.S.A. 43:16A-1(26)(a) and N.J.A.C. 17:4-4.1.

The PFRS is "a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from [the] fund." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 378-79 (2014) (quoting Seire v. Police & Fire Pension Comm'n of Orange, 6 N.J. 586, 591 (1951)). In 1955, the Legislature "transferred" the PFRS Board of Trustees to the Division of Pensions and Benefits in the Department of the Treasury.[14] N.J.S.A. 52:18A-96. However, the Legislature also made clear that these public pension boards retained "all of their respective present functions, powers, duties, equipment and records[.]" Ibid. (emphasis added).

The Legislature vested the PFRS Board of Trustees with "the general responsibility for the proper operation of the retirement system." N.J.S.A. 43:16A-13(a)(1). The PFRS Board consists of eleven trustees who are selected in the following fashion:

> (a) Five members to be appointed by the Governor, with the advice and consent of the

---

[14] The Legislature also transferred to the Division of Pensions in the Treasury Department the "Board of Trustees of the Public Employees' Retirement System, the Prison Officers' Pension Commission, the Board of Trustees of the Teachers' Pension and Annuity Fund, the Board of Trustees of the Alcoholic Beverage Law Enforcement Officers' Pension Fund . . . and the Consolidated Police and Firemen's Pension Fund Commission[.]" Ibid.

Senate, who shall serve for a term of office of four years and until their successors are appointed and who shall be private citizens of the State of New Jersey who are neither an officer thereof nor an active or retired member of any police or fire department thereof. Of the four members initially appointed by the Governor . . . one shall be appointed for a term of one year, one for a term of two years, one for a term of three years, and one for a term of four years.

(b) The State Treasurer or the deputy State Treasurer, when designated for that purpose by the State Treasurer.

(c) Two policemen and two firemen who shall be active members of the system and who shall be elected by the active members of the system . . . .

(d) One retiree from the system who shall be elected by retirees from the system  . . . .

[N.J.S.A. 43:16A-13(a)(2)(a)-(d).]

The five "public" unaffiliated trustees who are appointed by the Governor, with the advice and consent of the Senate, serve for a term of "four years and until their successors are appointed[.]" N.J.S.A. 43:16A-13(a)(2)(a). The State Treasurer or deputy State Treasurer serves on a permanent basis, without a fixed term. N.J.S.A. 43:16A-13(a)(2)(b). The two active police officers and two active firefighters are "elected by the active members of the system" and serve "for a term of four years according to such rules and regulations as the board of trustees shall adopt to govern such election." N.J.S.A. 43:16A-

13(a)(2)(c). The final member must be a "retiree" from the pension system, who can be either a former police officer or firefighter. This trustee serves "for a term of four years according to such rules and regulations as the board of trustees shall adopt to govern the election." N.J.S.A. 43:16A-13(a)(2)(d).

All trustees of the PFRS Board must "take an oath of office" affirming to fulfill his or her duties as a board member "diligently and honestly." N.J.S.A. 43:16A-13(a)(3). Each trustee also affirms under oath that he or she "will not knowingly violate or willingly permit to be violated any of the provisions of the law applicable to the retirement system." Ibid. This oath of office must be "subscribed by the member making it, and certified by the officer before whom it is taken, and immediately filed in the office of the Secretary of State." Ibid.

The members of the PFRS Board of Trustees serve without compensation, entitled only to be "reimbursed for all necessary expenses that they may incur through service on the board." N.J.S.A. 43:16A-13(a)(5). Each trustee has an equal vote on the board, regardless of how he or she was selected to serve, and six duly appointed trustees "must be present at any meeting" in

A-0083-11T2

order for the Board to be able to transact business.  N.J.S.A. 43:16A-13(a)(6).

Subject to the limitations of Police and Firemen's Retirement System Act, N.J.S.A. 43:16A-1 to -68, the PFRS Board of Trustees is obligated, on an annual basis, "to establish rules and regulations for the administration of the funds created by this act and for the transaction of the board's and committees' business."  N.J.S.A. 43:16A-13(a)(7).  Because decisions made by the PFRS Board of Trustees may affect other public pension systems administered by other public pension boards,[15] these "rules and regulations shall be consistent with those adopted by the other pension funds within the Division of Pensions and Benefits in order to permit the most economical and uniform administration of all such retirement systems."  Ibid.

The Legislature also described the function it expected the Director to perform in assisting the Board of Trustees in carrying out the responsibilities of its office.  "The Director of the Division of Pensions and Benefits shall appoint a qualified employee of the division to be secretary of the board. The administration of the program shall be performed by the personnel of the Division of Pensions and Benefits."  N.J.S.A. 43:16A-13(a)(8) (emphasis added).

---

[15]  See N.J.S.A. 52:18A-96.

The role and function of the Director of the Division of Pensions and Benefits is equally defined under the prevailing statutory and regulatory system:

> The Division of Pensions established hereunder shall be headed, directed and supervised by a director, who shall be a person qualified by training and experience to direct the work of such division. The director of such division shall be appointed by the Governor, with the advice and consent of the Senate, and shall serve during the term of the Governor appointing him, and until the director's successor is appointed and has qualified. The Director of the Division of Pensions shall receive such salary as shall be provided by law.
>
> [N.J.S.A. 52:18A-99.]

The role of the Division to assist the PFRS Board of Trustees is clearly delineated in the regulations adopted to administer this public pension:

> With respect to all claims for benefits, the Division of Pensions and Benefits shall investigate increases in compensation reported for credit which exceed reasonably anticipated annual compensation increases for members of the retirement system based upon consideration of the Consumer Price Index for the time period of the increases, the table of assumed salary increases recommended by the actuary and adopted by the Board, and the annual percentage increases of salaries as indicated in data from the Public Employment Relations Commission, or through other reliable industry sources of information regarding average annual salary increases. Those cases where a violation of the statute or rules is suspected shall be referred to the Board.

[N.J.A.C. 17:4-4.1(d) (emphasis added).]

The Division has the same obligation generally to "investigate increases in compensation reported for credit, which exceed reasonably anticipated annual compensation increases for members of the retirement system," N.J.A.C. 17:1-7.3(a), and report to the "respective Board or Commission" cases "where a violation of the statute is suspected." N.J.A.C. 17:1-7.3(b).

This regulatory scheme is reflected in every letter authored and sent to every appellant by Michael Czyzyk, the Division's Supervisor of External Audits. As Czyzyk dutifully explained:

> The Division will not implement this Administrative determination until 90 days have elapsed from the date of this letter to permit any members who wish to appeal adequate time to do so. Please provide a copy of this letter to all employees and retirees who are affected by this determination. Any affected member who disagrees with the determination may appeal to the PFRS Board of Trustees by writing a letter setting forth the reasons thereof. . . .
>
> You should not make any adjustments to the creditable salary you currently report on these members until the end of the 90-day appeal period. . . .
>
> At the end of the 90-day appeal period, if no outstanding appeals are pending or if no action was taken by the PFRS Board of Trustees, the Division will instruct you to

change the creditable salary reported to conform to this determination.

The PFRS Board of Trustees has the authority to "question the compensation of any member or retiree to determine its credibility where there is evidence that compensation reported as base salary may include extra compensation." N.J.A.C. 17:4-4.1(b). The PFRS Board of Trustees is empowered to conduct investigations of "increases in compensation reported for credit which exceed reasonably anticipated annual compensation increases for members of the retirement system." In re Snellbaker, 414 N.J. Super. 26, 34 (App. Div. 2010) (citation omitted).

If resolution of a question before the PFRS Board of Trustees "involves a question of facts," the Board has the legal authority to refer the matter to the Office of Administrative Law for an evidentiary hearing before an Administrative Law Judge. N.J.A.C. 17:4-1.7(d). If the appeal before the PFRS Board of Trustees concerns only a legal determination, as is the case in most of the appeals we decide here, "the Board may retain the matter and issue a final administrative determination which shall include detailed findings of fact and conclusions of law based upon the documents, submissions and legal arguments of the parties." N.J.A.C. 17:4-1.7(e). Once the PFRS Board of Trustees reaches a final determination, the affected PFRS member

A-0083-11T2

has the right to appeal to the Superior Court, Appellate Division. Ibid.

The Acting Director has not cited any authority to support taking the unprecedented action of conducting a de novo review of the PFRS Board of Trustees' final determinations of the cases we review here, and thereafter refusing to implement the Board's final determination. Our own independent research has also failed to find any authority to support the Acting Director's action.[16]

---

[16] Indeed, the Division of Pensions and Benefits' own website states: The "general responsibility for the operation of the PFRS is vested in the Board of Trustees under the provisions of N.J.S.A. 43:16A-13." For those interested in submitting an application to be considered for appointment to the PFRS Board of Trustees, the Division provides the following description of the responsibilities of the PFRS Board:

> Render determinations regarding Disability retirement cases.
>
> Review appeals pertaining to the disallowance of pension benefits.
>
> Adopt rules and regulations to provide for the payment of benefits and collection of monies as required by the statute.
>
> Establish rules and regulations within the limitations of statutes and opinions of the Courts and the Attorney General, designed to prevent injustices and inequities that may arise in the operation of the Retirement System.

(continued)

The Attorney General has responded in these appeals on behalf of the Acting Director. In that capacity, the Attorney General has questioned whether this court has the authority to compel the Division to abide by the PFRS Board of Trustees' final decision in these cases. The Attorney General argues that mandamus relief "is only appropriate where the party seeks to compel a governmental agency to perform a 'duty [that] is ministerial and wholly free from doubt' or 'to compel the exercise of discretion, but not in a specific manner.'" Twp. of Neptune v. State, Dep't of Envtl. Prot., 425 N.J. Super. 422, 434 (App. Div. 2012) (citing Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 299 (App. Div. 1997)).

---

(continued)

> Resolve individual questions on the merits of each case in terms of statutes, opinions of the Attorney General, advice of the Actuary and cases cited by counsel as deliberated by the Courts.
>
> View monthly and annual reports setting forth data such as assets and liabilities, income and disbursements and statistical summarization of membership as documented by the Actuary.
>
> [Division of Pensions and Benefits, http://www.state.nj.us/treasury/pensions/board_results.shtml#pfrs (last visited Mar. 8, 2015).]

A-0083-11T2

Following this line of reasoning, the Attorney General attempts to justify the unprecedented action taken by the Acting Director in these cases by advancing the following argument:

> While N.J.A.C. 17:4-4.1(d) and N.J.A.C. 17:1-7.3 direct the Division to report any suspected violations to the Board, nothing in the legislative and regulatory scheme compels the Division to accept "claims for benefits" that clearly offend the statute. Indeed, "administrative agencies are . . . charged under the State constitution with the responsibility of faithfully executing the laws." In re Appeal of Certain Sections of the Uniform Admin. Procedure Rules, 90 N.J. 85, 92-93 (1982) (citing N.J. Const. art. V, § 1, ¶ 11).

The Attorney General's position on behalf of the Acting Director disregards that the Legislature unambiguously "vested" the PFRS Board of Trustees with "the general responsibility for the proper operation of the retirement system[.]" N.J.S.A. 43:16A-13(a)(1). As discussed in great detail infra, the composition of the PFRS Board of Trustees reveals the Legislature's intent to devise an administrative quasi-judicial body composed predominantly of private citizens. The men and women who serve as trustees on the PFRS Board are required to take an oath that they will discharge their responsibilities and exercise their legal authority "diligently and honestly," and "will not knowingly violate or willingly permit to be violated any of the provisions of the law applicable to the retirement

45

system." N.J.S.A. 43:16A-13(a)(3). In the regulatory system devised to implement this legislative mandate, the PFRS Board of Trustees has the exclusive authority to "question the compensation of any member or retiree to determine its credibility where there is evidence that compensation reported as base salary may include extra compensation." N.J.A.C. 17:4-4.1(b).

The Acting Director's refusal to implement the final decision of the PFRS Board of Trustees is untethered to any statutory or regulatory authority. This unprecedented ad hoc approach adopted by the Acting Director in these cases undermines the complimentary role the Division is obligated to play by providing the staffing support necessary to enable the PFRS Board of Trustees to carry out its role as the final administrative arbiter of what constitutes creditable compensation for purposes of pension benefits. N.J.A.C. 17:4-4.1(d); N.J.A.C. 17:1-7.3(b).

The PFRS Board of Trustees has acted as the final arbiter in these matters consistently since its creation by the Legislature. "[T]he fact that the Legislature has not acted in response to an agency's interpretation or practice is 'granted great weight as evidence of its conformity with the legislative intent.'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l

High Sch. Dist., Monmouth Cnty., 199 <u>N.J.</u> 14, 24-25 (2009) (quoting <u>Malone v. Fender</u>, 80 <u>N.J.</u> 129, 137 (1979)).

We also question the role the Attorney General has played in these appeals. In our view, the position the Attorney General adopted in <u>Gladden v. Board of Trustees of the PERS</u>, 171 <u>N.J. Super.</u> 363 (App. Div. 1979), should have been followed in these cases. In <u>Gladden</u>, a World War II veteran who had served for many years in our State's Legislature applied for enrollment in the Public Employees' Retirement System in May 1977. <u>Id.</u> at 366-67. The Attorney General advised the PERS Board "that under the governing statutes[,]" based on the appellant's "continuous permanent employment in the Legislature" and his status as a veteran, the PERS Board was "mandatorily required" to enroll the appellant in the PERS, retroactive to 1958. <u>Id.</u> at 367.

The PERS Board steadfastly disregarded the Attorney General's legal opinion and refused to enroll the appellant into the PERS based on its interpretation of one of its own regulations. <u>Ibid.</u> The PERS Board notified the appellant of its decision, "indicating that the decision was final and could be appealed to the Appellate Division." <u>Ibid.</u> Thereafter, the Attorney General requested the PERS Board "to reconsider its decision." Unfortunately, the PERS Board remained defiant and

"denied the Attorney General's request for a reconsideration." Ibid.

The appellant in Gladden appealed to this court. The PERS Board asked the Attorney General to represent its interests before this court. In response,

> the Attorney General reiterated to the Board that the issue involved was purely one of construction of the governing statutes; that the Attorney General's opinion on the legal issue was patently correct and binding on the Board, and that there was no arguable basis upon which the Board's decision could be defended in court. Accordingly, the Board was advised that the Attorney General would not provide it with legal representation in the courts at public expense and that a motion to intervene in support of the Attorney General's opinion would be filed.
>
> [Ibid.]

The PERS Board in Gladden retained private counsel and filed an appeal from the Attorney General's "decision not to afford representation to the [PERS] Board." Id. at 368. The Attorney General moved to intervene on his own behalf as an appellant. Ibid. Ultimately, we granted the Attorney General's motion for leave to participate as amicus curiae, "permitted the individual members of the [PERS] Board to intervene on their own behalf," and denied the motions filed by the PERS Board's privately retained law firm to designate it as "special counsel" to the PERS Board and order the State to pay its legal fees in

A-0083-11T2

connection with the appeal. <u>Ibid.</u> The Supreme Court denied the PERS Board's privately retained motions for leave to appeal our decisions. <u>Ibid.</u>

After deciding this flurry of motions, we reached the following decision:

> There can be no question that a refusal of a state agency to abide by a valid state law is a fundamental concern of the Attorney General both in his capacity and responsibility as adviser to the agency and in his capacity and responsibility as protector of the public. <u>Since the efforts of the Attorney General informally to convince the Board to abide by the statutory scheme and grant appellant's mandatory enrollment have met with not only unacceptance but defiance, the Attorney General has appeared "to preserve his function and responsibility and to protect the public from arbitrary and illegal action.</u>"
>
> [<u>Id.</u> at 368-69 (emphasis added).]

Here, by contrast, the Attorney General has not asserted he made any efforts, informal or otherwise, to advise the PFRS Board of Trustees that its decisions with respect to what constitutes creditable compensation for pension purposes under <u>N.J.S.A.</u> 43:16A-1(26)(a) were legally incorrect and that there was no arguable basis upon which the PFRS Board's decisions could be defended in court. As we noted in <u>Gladden</u>, whether a state agency is abiding by a valid state law "is a fundamental concern of the Attorney General both in his capacity and

49

responsibility as adviser to the agency and in his capacity and responsibility as protector of the public." Ibid. Had the record in these appeals contained evidence of: (1) the Attorney General's efforts to advise the PFRS Board of Trustees of the proper legal interpretation of creditable compensation for pension purposes under N.J.S.A. 43:16A-1(26)(a), and (2) the PFRS Board of Trustees' defiant refusal to abide by the Attorney General's opinion, the proper action should have been for the Attorney General to petition this court under Gladden to compel the PFRS Board of Trustees to abide by the Attorney General's legal opinion.

Instead, the Attorney General decided to represent and defend the legally untenable actions of the Acting Director to unilaterally refuse to implement the final decisions of the PFRS Board of Trustees. This approach is both legally unsupportable and completely unnecessary because it promotes ultra vires, self-help actions by the Acting Director and overlooks the lawful path the Attorney General could have followed under Gladden.

The Legislature placed the Division of Pension and Benefits within the Treasury Department and appointed the State Treasurer or the deputy State Treasurer as a permanent member of the PFRS Board of Trustees. N.J.S.A. 43:16A-13(a)(2)(b). Considering

the five public members who are appointed by the Governor, N.J.S.A. 43:16A-13(a)(2)(a), the Legislature structured the PFRS Board of Trustees in a manner that gives the Executive Branch a permanent majority of six presumably "disinterested" members on this eleven-member Board. Although the PFRS Board of Trustees can function and transact business with six members present, N.J.S.A. 43:16A-13(d)(6), there is no basis to presume the multiple permutations of the makeup of any six-member majority will necessary favor any particular point of view. Thus, as matter of fact, the composition of the PFRS Board of Trustees does not favor those most affected by its decisions.

However, we do not mean to suggest or imply there are valid reasons to question the objectivity or impartiality of the remaining five members of the PFRS Board of Trustees, merely because they are selected from the ranks of police officers and firefighters. We presume all of the members of the PFRS Board of Trustees will carry out their duties and obligations faithfully, impartially, and according to law, regardless of how they are selected. In fact, this court has a longstanding, well-established view that citizens who serve on these pension boards

> are fiduciaries and therefore have a duty to protect the fund and the interests of all beneficiaries thereof. They must exercise due care, diligence and skill in

administering the trust. . . . It would not serve the statutory policy to pay out moneys to those not entitled thereto.

> [Mount v. Trs. of Pub. Emps.' Ret. Sys., 133 N.J. Super. 72, 86 (App. Div. 1975). See also Francois v. Bd. of Trs., 415 N.J. Super. 335, 357 (App. Div. 2010); Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 215 (App. Div. 2007); Fasolo v. Bd. of Trs., 190 N.J. Super. 573, 586 (App. Div. 1983).]

Indeed, the PFRS Board of Trustees has excluded longevity payments and other forms of individual salary adjustments after having determined, based on the record of the particular case, that the salary adjustments were granted primarily in anticipation of the employee's retirement and were not creditable for pension purposes as defined in N.J.S.A. 43:16A-1(26) and N.J.A.C. 17:4-4.1. Wilson v. Bd. of Trs. of Police and Firemen's Ret. Sys., 322 N.J. Super. 477, 484 (App. Div. 1998).

The system for administering the public pensions of police officers and firefighters was established with the primary objective of inducing

> able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in

> favor of the persons intended to be benefited thereby.
>
> [_Geller v. Dep't of the Treasury of N.J._, 53 _N.J._ 591, 597-98 (1969) (citations omitted).]

We discern no basis to conclude that the composition of the PFRS Board of Trustees undermines this overarching public policy. The five municipalities and four unions decided to transcend their traditional roles as antagonists in labor matters and speak with one voice here, because the Acting Director's ultra vires actions to refuse to implement the final decisions of the PFRS Board of Trustees left them without any other alternative.

Left unaddressed by this court, the ad hoc, untenable actions taken by the Acting Director would have left this public pension in chaos, subject to the unfettered discretion of a self-appointed "Board overseer." Those most affected by the Acting Director's ultra vires actions, the thousands of retired and active duty police officers, firefighters, and their families, would have been left in bureaucratic limbo, unable to organize their financial affairs and rationally plan for their future needs. Even assuming the Acting Director acted in good faith to preserve the actuarial integrity of the pension system as she saw it, her powers to act in this fashion must be expressly conferred by the Legislature.

The current composition of the PFRS Board of Trustees and the authority vested in it by the Legislature as the final arbiter of what constitutes creditable compensation benefits as defined in N.J.S.A. 43:16A-1(26)(a) or N.J.A.C. 17:4-4.1 is not new. It has existed and functioned unchallenged heretofore for decades. Any perceived or actual structural bias in its composition is a matter for the Legislature to address. "The wisdom of a statute is not for the courts." Dacunzo v. Edgye, 19 N.J. 443, 454 (1955). See also State ex rel. B.P.C., 421 N.J. Super. 329, 347 (App. Div. 2011) ("Our role as a court is not to question the wisdom of legislative enactments, but to enforce them as long as they are not contrary to constitutional principles.").

Based on the record presented by the nine appellants and the authority the Legislature vested in the PFRS Board of Trustees, we hold the action of the Acting Director to refuse to implement a final determination made by the PFRS Board of Trustees concerning what constitutes creditable compensation for pension purposes under N.J.S.A. 43:16A-1(26)(a) in these cases was ultra vires, without legal force or effect. Final determinations of the PFRS Board of Trustees are reviewable only by this court. N.J.A.C. 17:4-1.7(e); R. 2:2-3(a)(2).

So Ordered.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0083-11T2

_____

**ASHRAFI, J.A.D., concurring in the result.**

I concur in the court's judgment but write to point out a seeming incongruity in the process established by statute for adjudicative decisions of the Board of Trustees of the Police and Firemen's Retirement System (PFRS).

In these appeals, the Division of Pensions and Benefits (the Division) contends the appellant municipalities provide accelerated longevity or seniority salary increments during the later service years of their police officers and firefighters and those salary increments should not be credited toward calculating pension benefits.

Under the PFRS, retirement benefits are typically available after a PFRS member reaches age fifty-five and has completed twenty years of service. N.J.S.A. 43:16A-5. The amount of pension benefits is based on the member's "final compensation." N.J.S.A. 43:16A-5(2)(b), (3). The term "final compensation" refers to the member's final year of service, N.J.S.A. 43:16A-1(28)(a), or, alternatively for newer PFRS members, the average of the three highest years of salary during all service years, N.J.S.A. 43:16A-1(28)(b). The word "compensation," is defined by statute as "base salary . . . which is in accordance with

established salary policies of the member's employer for all employees in the same position . . . ." N.J.S.A. 43:16A-1(26). The statute specifically excludes "individual salary adjustments which are granted primarily in anticipation of the member's retirement . . . ." Ibid.

In plainer English, the statutes provide that PFRS pension benefits are to be calculated using the member's legitimate final or highest base salary and not enhancements in compensation intended to increase the member's retirement benefits.

The exclusion of atypical salary increases near the time of retirement "protect[s] the actuarial soundness of the pension fund by prohibiting the use of ad hoc salary increases intended to increase retirement allowances without adequate compensation to the [pension] fund . . . ." In re Puglisi, 186 N.J. 529, 534 (2005) (internal quotation marks and citations omitted). According to the Division, the employing municipality and the employee do not contribute enough to the pension fund from short-term, pre-retirement salary increases to fund the higher pension benefits that will likely be payable over many years of retirement.

In the appeals currently before us, the Division questioned accelerated salary increments granted by the appellant

2                                                          A-0083-11T2

municipalities after the PFRS members' twentieth year of service. For example, the Town of Harrison provides to its police officers an additional two-percent longevity increment every five years from completion of the fifth to the twentieth years of service. It then provides an additional two-percent increment at the start of the twenty-third year of service and yet one more two-percent increment at the start of the twenty-fourth year. <u>See</u> <u>ante</u> at ___ (slip op. at 8). Thus, Harrison's longevity increments accelerate after the twentieth year, increasing by four percent in just three years and one day of additional service. Similarly, the City of Linden provides to some of its firefighters a $1,000 increment as "senior officer pay" beginning in the fourteenth year of service. It then provides another $1,750 beginning in the twenty-first year and still an additional $2,250 beginning in the twenty-fourth year of service. <u>See</u> <u>ante</u> at ___ (slip op. at 19). The Division took the position that these later increments are granted in anticipation of the retirement of police officers and firefighters and should not increase their pension benefits.

The unions that represent the PFRS members and the municipalities that negotiated those contract terms presented arguments and information to the PFRS Board of Trustees in opposition to the Division's position. The Board then ruled

A-0083-11T2

that the salary increments in dispute were not granted to enhance retirement benefits and should be included in calculating the pensions of retiring police officers and firefighters. The Acting Director of the Division disagreed with those rulings and declined to implement them. The court holds today that the Acting Director was not authorized by the Legislature to overrule the PFRS Board of Trustees. I agree with that holding.

The court reaches no conclusion on the merits of the dispute, that is, whether the disputed longevity and seniority increments are consistent with the statutory definition of "compensation" or are "individual salary adjustments . . . primarily in anticipation of . . . retirement," N.J.S.A. 43:16A-1(26). See ante at ___ (slip op. at 4). I, too, reach no conclusion on the merits of the dispute, noting as well that these appeals provide an inadequate factual record from which we might have decided the issue had it been properly before us.[1]

---

[1] As far as I can tell, the record before the PFRS Board of Trustees did not include information such as what the actuarial costs of the increments are to the PFRS pension fund and, most important, how frequently and quickly members retire after receiving the increments. It might have been relevant to consider whether the accelerated longevity and seniority increments help the municipalities retain in active employment their highly-experienced police officers and firefighters or whether the increments simply increase "final compensation"

(continued)

My present concern is with the disparity in the administrative and judicial review process of such decisions by the PFRS Board of Trustees. It seems that an appeal can be taken only when the Board decides a matter against the interests of a PFRS member. See N.J.A.C. 17:4-1.7. In that circumstance, the member has a right to appeal the adverse decision to this court under Rule 2:2-3(a)(2). However, if the decision of the PFRS Board favors the member, there seems to be no interested party who has a right to appeal. The employer municipality is not an interested adverse party because it negotiated the increments and is not itself responsible for paying the increased pension benefits during the members' years of retirement.

As these appeals illustrate, five municipalities and four unions joined together and "speak with one voice," ante at ___ (slip op. at 4), in challenging the decisions of the Acting Director. Not only are the municipalities bound by the collective bargaining agreements they negotiated but they have a financial interest in the enforcement of those agreements. The municipalities pay the salary increments out of their own coffers for a limited number of years until the police officer

(continued)
shortly before retirement of most officers and firefighters who are eligible to retire.

or firefighter retires. Then the burden falls on the PFRS to pay the increased pension benefits for all the years of retirement.

By negotiating terms that provide favorable retirement benefits to their employees, the municipalities might obtain concessions in other areas of negotiations that benefit the municipalities financially. In <u>Board of Trustees of the Teachers Pension and Annuity Fund of New Jersey v. La Tronica</u>, 81 <u>N.J. Super.</u> 461, 471 (App. Div. 1963), <u>certif. denied</u>, 41 <u>N.J.</u> 587 (1964), we described unusual salary arrangements in the final years of a public employee's active employment as the local employer's "grand gesture of farewell at little expense."

In these cases, the Acting Director claims she refused to implement the PFRS Board's decisions to protect the viability of the pension fund for all PFRS members. It seems, however, that the Legislature has afforded her, and the Executive Branch of State government, no right to review the PFRS Board's decisions or to appeal to this court.

This court's decision today explains the statutory and regulatory provisions that establish the Division's and the PFRS Board's relative authority in addressing the matters in dispute. The Division's primary function is administrative. <u>N.J.S.A.</u> 43:16A-13(a)(8). It also has an investigatory and referral

function when it detects salary enhancements that may be contrary to the statutory definition of "compensation," N.J.A.C. 17:4-4.1(d), but it does not have adjudicatory responsibilities or authority in determining what compensation should be credited for purposes of calculating a member's pension rights.

The court today holds that the Legislature has placed the adjudicative function and authority exclusively with the PFRS Board of Trustees. Ante at ___ (slip op. at 46). I am not as certain as my colleagues that the Board's adjudicative authority is exclusive, but I agree that no statute, regulation, or case law cited to us grants the Acting Director power to review the Board's decisions. See N.J.S.A. 43:16A-13(a)(1) ("the general responsibility for the proper operation of the retirement system is hereby vested in a board of trustees . . . ."); N.J.A.C. 17:4-1.7 (setting forth procedures for a member's appeal to the PFRS Board of Trustees); Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 220-22 (2009) (final administrative decision issued by Board of Trustees); see also Sellers v. Bd. of Trs. of the Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 62 (App. Div. 2008) (Decision-making powers of PFRS Board of Trustees include authority "to apply equitable

principles to provide a remedy when justice so demands, provided the power is used rarely and sparingly . . . .").[2]

While full adjudicative authority placed in such a board may not be unusual, the Board of Trustees in this case is not entirely under the control of the Executive and Legislative Branches of State government. The eleven-person Board consists of five positions that are reserved for and elected solely by active or retired police officers and firefighters who are members of PFRS. N.J.S.A. 43:16A-13(a)(2)(c), (d); N.J.A.C. 17:4-1.4(b). Those five Board members may be adjudicating a dispute about salary provisions that are the same as ones from which they themselves benefit financially.

In comparison, persons with similar conflicts of interest would likely be excused for cause from serving on a jury that was asked to decide the issue, although jurors too take an oath to render a fair and impartial decision. See N.J.S.A. 2B:23-6. I do not mean that a jury and an administrative board are the same kind of adjudicative body. I use the analogy as an illustration of the impartiality we expect in governmental

---

[2] The Division does not argue that the Acting Director is the "head of the agency" who, under the provisions of the Administrative Procedures Act, N.J.S.A. 52:14B-1 to -15, must issue a final agency decision in a contested pension benefits case, N.J.S.A. 52:14B-10. Also, the Division has not cited N.J.S.A. 52:14B-8 as supporting a declaratory ruling of the Acting Director with respect to the disputed salary provisions.

adjudication of factual disputes. Nor are my comments intended to criticize the membership of the PFRS Board of Trustees. I do not denigrate the integrity and good faith of the police and firefighter members of the PFRS Board of Trustees any more than a trial judge denigrates the integrity and good faith of a potential juror who is excused from a case.

Whatever the Board's membership may be, my comments are primarily directed to the absence of administrative and judicial review of its decisions when they are favorable to the PFRS member. If such decisions of the Board are final and the Director of the Division has no power to review them administratively or to decline to implement them, then the Executive Branch is seemingly without recourse in protecting the pension fund against a legally erroneous or skewed ruling of the Board.

The court's decision today explains the unusual procedural steps taken by the State Attorney General after a disagreement with the Board of Trustees of a similar public employees' pension fund. See Gladden v. Bd. of Trs. of the Pub. Employees' Ret. Sys., 171 N.J. Super. 363, 367-68 (App. Div. 1979). The court suggests that the Attorney General could similarly have advised the PFRS Board in these cases that its actions are contrary to law and then pursued a remedy in this court if the

Board refused to heed the Attorney General's advice. <u>Ante</u> at ___ (slip op. at 49-50).

The <u>Gladden</u> decision, however, only came before this court for judicial review because the Board of Trustees in that case decided the matter against the interests of the prospective member of the pension fund, Gladden, and he filed the appeal. <u>Gladden</u>, <u>supra</u>, 171 <u>N.J. Super.</u> at 367.  Had the Board's decision been in favor of Gladden, there would have been no appeal and no judicial case in which the Attorney General could have intervened to resolve a disagreement with the Board's decision.  In the absence of an appeal by a party that has the right to appeal, I am unable to identify what procedural mechanism the Attorney General might have employed to make a direct application to this court, which is not normally a court of original jurisdiction.  <u>See</u> <u>R.</u> 2:10-5 ("The appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review.").

I also question the lack of any record in these cases stating the reasons supporting the final rulings of the PFRS Board of Trustees.  The Division and the Board explained their determinations when initially deciding these matters against the interests of PFRS members.  But the Board's subsequent rulings in favor of PFRS members consist only of terse letters from the

10                                                          A-0083-11T2

Board secretary stating the result without further explanation. Not even a tally of the Board's vote is provided.

As the Legislature has devised the PFRS and its Board of Trustees, there seems to be no opportunity for judicial review when the PFRS member obtains a favorable decision from the PFRS Board of Trustees and when the pension fund is thus obligated to pay a higher pension. While that result may not be different from the procedures applicable to other adjudicative boards, these cases seem to differ in that the Governor and the Legislative Branch have only partial control of appointments to the PFRS Board of Trustees, see N.J.S.A. 43:16A-13(a)(2). Consequently, the PFRS Board of Trustees seems to have powers beyond that of other adjudicative boards within our State system of governance.

I concur in the court's judgment because I agree that the applicable statutes and regulations do not authorize the Acting Director effectively to overrule decisions made by the PFRS Board of Trustees by declining to implement them.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0083-11T2