**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4018-15T1

WILLIE JETTI,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF THE
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Submitted November 29, 2017 — Decided July 26, 2018

Before Judges Fuentes and Koblitz.

On appeal from the Board of Trustees of the
Police and Firemen's Retirement System,
Department of Treasury, PFRS No. 3-76211.

Fusco & Macaluso Partners, LLC, attorneys for
appellant (Amie E. DiCola, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Melissa H. Raksa,
Assistant Attorney General, of counsel; Robert
S. Garrison, Jr., Deputy Attorney General, on
the brief).

PER CURIAM

From February 1, 2007 to March 10, 2009, Willie Jetti was simultaneously employed as a corrections officer by the Essex County Corrections Department and as a firefighter by the City of Newark. Jetti appeals from the final decision of the Board of Trustees, Police and Firemen's Retirement System (PFRS or Board) denying his application for accidental disability retirement benefits and ordering a partial forfeiture of service credit. We affirm.

The conflict and disruption caused by appellant holding these two full-time public service positions compromised the safety of the public and of appellant's coworkers. On at least eight occasions between July 1, 2007 and March 10, 2009, Jetti reported to the Newark Fire Department that he was unable to work due to illness or injury. On these same days, Jetti worked his complete shift as a Corrections Officer at the Essex County Correctional Facility. On May 29, 2009, the City served Jetti with a Preliminary Notice of Disciplinary Action (PNDA) alleging incompetency, inefficiency, and failure to perform duties, N.J.A.C. 4A:2-2.3(a)(1); chronic absenteeism or lateness, N.J.A.C. 4A:2-2.3(a)(4); conduct unbecoming a public employee, N.J.A.C.

4A:2-2.3(a)(6); neglect of duty, N.J.A.C. 4A:2-2.3(a)(7);[1] and other sufficient cause related to the violations of the rules and regulations of the Newark Fire Department, N.J.A.C. 4A:2-2.3 (a)(12).[2] The PNDA also included the following statement:

> While serving in the capacity as a firefighter with the City of Newark, Willie Jetti, did purposely commit [an] act of malingering by feigning an illness, and/or injury that rendered him incapable to perform his required duties as a firefighter by reporting to his Command on July 1, 2007, March 29, 2008, June 17, 2008, August 24, 2008, September 13, 2008, October 19, 2008, February 4, 2009, and on March 10, 2009 that he was legitimately sick and/or injured while knowing that said information was false. Firefighter Jetti then reported to work and received compensation as a corrections officer with the Essex County Department of Corrections during the same time period he was on paid sick leave with the City of Newark.

On November 13, 2009, Essex County served Jetti with a PNDA notifying him of the results of a joint investigation conducted by the Internal Affairs Departments of the City's Fire Department and the County's Department of Corrections. This investigation found Jetti had reported he was sick and unable to perform his duties as a corrections officer approximately thirty-six times;

---

[1] The PNDA erroneously charged Jetti with a violation of N.J.A.C. 4A:2-2.5(a)(7). The Final Notice of Disciplinary Action correctly lists this charge as N.J.A.C. 4A:2-2.3(a)(7).

[2] Jetti was originally charged with N.J.A.C. 4A:2-2.3(a)(11), which has since been re-codified as N.J.A.C. 4A:2-2.3(a)(12).

on these same dates, Jetti reported to work as a firefighter for the City. Jetti waived his right to a departmental hearing. On May 26, 2010, the County served him with a Final Notice of Disciplinary Action (FNDA), advising him that the disciplinary charges against had been sustained. The County removed Jetti from his position as a corrections officer effective May 26, 2010.

After Jetti appealed to the Civil Service Commission, the matter was transferred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). On October 5, 2010, Jetti, the City, and the County appeared before the ALJ and reported that they had reached a settlement agreement.

In the Stipulation of Settlement and General Release between Jetti and the City of Newark, the City agreed to amend the FNDA against Jetti to reflect that effective June 1, 2009, Jetti had "<u>resigned in good standing</u>" from his position as a firefighter. (emphasis added). The settlement further provided that: "The City's personnel records shall reflect Jetti's resignation and that the charges set forth in the FNDA shall be withdrawn." In exchange, Jetti agreed to waive "any and all rights and/or claims that he has, may have, and/or may have had against the City and

its directors, officers, employees, agents and attorneys, concerning any and all matters arising from . . . this Agreement."[3]

However, after some time passed without a definitive resolution, the ALJ found "it became apparent" that Jetti refused to sign the settlement agreement that included the County. The ALJ ordered the parties and counsel to appear on January 5, 2011 to ascertain the reason why Jetti was unwilling to settle with the County. The ALJ found that Jetti was unwilling to include the County in the settlement "because he did not trust the County or its political affiliates, and indicated that he did not recall the prior hearing due to injury-induced memory issues."

On February 28, 2011, the County moved before the ALJ to enforce the settlement. The County argued that the record of the October 5, 2010 settlement conference shows Jetti understood the terms of the Agreement, had the opportunity to consult with his attorney, and voluntarily agreed to sign the Stipulation. Jetti submitted a certification again claiming to have no recollection of what occurred on October 5, 2010.

---

[3] The Agreement identified by name the "claims" Jetti agreed to forgo, which include, "but is not limited to . . . the New Jersey Law Against Discrimination, [N.J.S.A. 10:5-1 to -49], Title VII of the Civil Rights Act of 1964, [42 U.S.C. § 2000e-1 to -17], Age Discrimination and Employment Act, [29 U.S.C. § 621 to 634], Conscientious Employee Protection Act, [N.J.S.A. 34:19-1 to -14], and the American With Disabilities Act, [42 U.S.C. § 12101 to 12213]."

On April 11, 2011, the ALJ issued an Initial Decision finding that on October 5, 2010, "counsel for each of the parties advised the [ALJ] that both matters were settled." The ALJ found Jetti reviewed the Stipulation with the assistance of his attorney. The ALJ explained, "after some brief discussion between [Jetti] and counsel relative to one of the terms, [Jetti] signed the Stipulation and the original was provided to the [ALJ]." Thereafter, Jetti's attorney questioned him on the record to ensure that Jetti was aware of the contents of the Stipulation and that he was entering into the agreement voluntarily. The ALJ also questioned Jetti directly to confirm Jetti "had read and understood the Stipulation."

Based on this record, the ALJ concluded that Jetti entered into the Stipulation knowingly, voluntarily, and with the assistance of counsel. The ALJ found the Stipulation of Settlement was binding and met all of the requirements in N.J.A.C. 1:1-19.1, and was therefore enforceable as to all of the parties in the case, including the County. In a Final Administrative Action issued on June 15, 2011, the Civil Service Commission adopted the ALJ's factual findings and legal conclusion holding that the Stipulation of Settlement Agreement was binding as to all parties. In response to Jetti's direct appeal, this court affirmed the

Civil Service Commission's decision in an unpublished opinion. In re Jetti, Essex Cty., No. A-2709-11 (App. Div. Oct. 28, 2013).

Against this procedural backdrop, we now address the PFRS's April 13, 2016 decision to deny Jetti's application for accidental disability benefits. On March 10, 2009, while working as a corrections officer at the Essex County Correctional Center, Jetti was allegedly attacked by an inmate. Jetti claimed that he has little recollection of how the attack occurred or how many inmates may have been involved in the assault. Jetti also claimed that as a result of this assault, he suffers from back pain, dizziness, nausea, and anxiety.

On May 11, 2010, while the disciplinary charges were pending concerning the abuse of sick days and other matters related to holding two full-time public positions, Jetti applied for accidental disability benefits based on the job-related incident as a corrections officer. At the time Jetti filed this application, the Division of Pensions and Benefits was not aware of Jetti's pending disciplinary charges. On January 11, 2011, the PFRS Board denied Jetti's application for accidental disability benefits, after applying the standard established by the Supreme Court in Richardson v. Bd. of Tr., Police and Firemen's Ret. Sys., 192 N.J. 189 (2007).

The PFRS Board "determined that Mr. Jetti exhibited poor judgment in calling out sick from his Essex County job to work for the City of Newark when in actuality he was not sick." It found Jetti's misconduct warranted the forfeiture of service and salary credit for the period of time that he held the dual public positions. The PFRS Board found especially troubling the five occasions Jetti reported working for both the County and the City on the same day, resulting in a twenty-four-hour work day. Finally, the PFRS Board concluded Jetti qualified for deferred retirement. Jetti challenged the Board's decision and sought a hearing before an ALJ.

On March 7, 2016, the ALJ issued an Initial Decision recommending the denial of Jetti's application for accidental disability benefits based on his failure to satisfy the standard in Richardson. With respect to the pension forfeiture, the ALJ found that "on June 6, 2007, the Division of Pensions expressly notified [Jetti] that there was . . . no law" that permits "multiple-location members in the PFRS . . . ." In addition, Jetti was "over the maximum age allowed to begin as a firefighter within PFRS." Despite this, the ALJ found the disciplinary charges against Jetti remained mere allegations because they were not proven.

The PFRS Board reviewed the ALJ's Initial Decision and disagreed with his conclusion with respect to the pension forfeiture issue. Relying on the Court's decision in Corvelli v. Bd. of Trs., 130 N.J. 539 (1992), the Board found it was "not restricted to considering only [Jetti's] convictions." Citing N.J.S.A. 43:1-3(c), the Board reasoned it was "required to evaluate and consider all of [Jetti's] actions while in public service, in order to determine whether his misconduct . . . violated the requirement of honorable public service and warranted a partial forfeiture of his service credit." This statute provides, in relevant part:

> In evaluating a member's misconduct to determine whether it constitutes a breach of the condition that public service be honorable and whether forfeiture or <u>partial forfeiture of earned service credit or earned pension or retirement benefits is appropriate, the board of trustees shall consider and balance the following factors in view of the goals to be achieved under the pension laws</u>:
>
>     . . . .
>
> (7) <u>the nature of the misconduct</u> or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;
>
> (8) the relationship between the misconduct and the member's public duties;
>
> (9) <u>the quality of moral turpitude</u> or the degree of guilt or culpability, including the

member's motives and reasons, personal gain and similar considerations;

(10) the availability and adequacy of other penal sanctions; and

(11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

[N.J.S.A. 43:1-3(c) (emphasis added).]

Mindful of these factors, the Board noted that the Division of Pensions had expressly notified Jetti on June 6, 2007, of the absence of legal support for "multiple location members" and that he was over the age limit to begin as firefighter for purposes of the PFRS. Despite this admonition, Jetti "stayed in his firefighter position with the City of Newark[.]" The Board concluded that once it determines that a partial forfeiture is warranted,

> it shall order that benefits be calculated as if the accrual of pension rights terminated as of the date the misconduct first occurred or, if termination as of that date would in light of the nature and extent of the misconduct result in an excessive pension or retirement benefit or in an excessive forfeiture, a date reasonably calculated to impose a forfeiture that reflects the nature and extent of the misconduct and the years of honorable service.
>
> [N.J.S.A. 43:1-3(d) (emphasis added).]

When reviewing a final State agency determination, we can intervene only if the decision is arbitrary, capricious,

unreasonable, <u>Brady v. Bd. of Rev.</u>, 152 N.J. 197, 210 (1997), or not supported by substantial credible evidence in the record. <u>N.J. Soc'y for the Prev. of Cruelty to Animals v. N.J. Dep't of Agric.</u>, 196 N.J. 366, 384-85 (2008). We have articulated this standard of review as follows:

> Under the arbitrary, capricious, and unreasonable standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion.
>
> [<u>Twp. Pharmacy v. Div. of Med. Assistance & Health Servs.</u>, 432 N.J. Super. 273, 283-84 (App. Div. 2013).]

We discern no legal basis to disturb the Board's decision ordering a partial forfeiture of Jetti's pension benefits. There is overwhelming evidence of Jetti's misconduct. "The Legislature vested the PFRS Board of Trustees with 'the general responsibility for the proper operation of the retirement system.'" <u>In re Town of Harrison</u>, 440 N.J. Super. 268, 291 (App. Div. 2015) (quoting N.J.S.A. 43:16A-13(a)(1)). The Stipulation of Settlement between Jetti and the County of Essex and the City of Newark in no way precludes the PFRS Board from fulfilling its statutory obligations as the Trustees of this public pension system. We thus affirm

substantially for the reasons expressed by the PFRS Board in its April 13, 2016 final decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4018-15T1