EUGENE O. VLIET, PETITIONER-APPELLANT, v. BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 5, 1977—Decided January 31, 1978.

Before Judges FRITZ, BOTTER and ARD.

*Messrs. Markowitz & Laughlin,* attorneys for appellant.

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Mr. Samuel J. Halpern,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BOTTER, J. A. D. Eugene O. Vliet had been employed by the Township of Chester since 1933 and was enrolled in the Public Employees' Retirement System (PERS) on July 1, 1964. In 1970 he held the municipal positions of township clerk, treasurer, clerk of the board of adjustment and clerk of the Planning Board at $7,500, $1,500, $800 and $800 a year respectively. He reached age 70 on November 21, 1969. He was advised that his employment would be terminated as of December 31, 1970 as township clerk and treasurer. He was asked if he would continue on as clerk of the planning board and of the board of adjustment. He agreed to do so, provided his pension would not be affected.

In October 1970 the deputy township clerk wrote to the Division of Pensions asking: if appellant takes a "part-time" job with the township would he still receive full pension benefits? On December 2 PERS responded that appellant may accept "temporary" employment without adversely affecting his pension, but "if he accepts employment which will require him to re-enroll in [PERS], his retirement allowance would be reduced while he was reemployed."

Vliet then asked PERS if he earned more than "the allowable $500" in "temporary employment", would his pension be reduced by the excess? PERS replied that there was no limit on the amount of earnings in temporary public employment, "the important fact being that this employment must definitely be termed temporary employment and as such does not require that the person re-enroll in the Public Employees' Retirement System."

Vliet applied for retirement effective January 1, 1971. Later, in January 1971, the two municipal boards appointed him "temporary clerk." His retirement was approved by respondent in February 1971, effective January 1, 1971, and benefits were paid to Vliet until March 1975 based upon the combined salaries paid him for the four positions he held before retirement. His employment as "temporary clerk" of the boards was renewed from year to year in 1972, 1973 and 1974.

In 1974 a survey of Chester Township employees not enrolled in PERS revealed that Vliet was semi-retired and was classified as a regularly budgeted employee as distinguished from a temporary employee. This opened the inquiry into Vliet's pension status. The Division of Pensions was advised that his employment since January 1971 was on a temporary basis and that a replacement could not be found because the salary for the positions was too low. In September 1974 Vliet resigned his positions with the two boards.

Thereafter, in March 1975 respondent rescinded its approval of Vliet's retirement application and demanded repay-

ment of all sums paid him since January 1, 1971. The total sum was $19,886.85. Respondent also demanded contributions of $633.75 which were due based upon Vliet's continued employment with the township. Vliet was invited to file a new retirement application effective October 1, 1974, and he was told that his reimbursement could be made by an actuarial reduction of the allowance for his remaining lifetime. Vliet filed a second retirement application without prejudice to his rights. He also challenged the action proposed by the Division of Pensions, and a hearing was held.

No witnesses were offered by Vliet at the hearing. The submission on his behalf was in writing. Affidavits were submitted stating generally that no replacements could be found for the positions of clerk to the two boards, although inquiries were made and people were interviewed for those positions.

John A. McGarrity, Assistant Director of the Division of Pensions, testified at the hearing. His responsibility included monitoring pension allowances to individuals after retirement. He stated that a roster received from Chester Township in the summer of 1974 showed that Vliet, a retired employee, was reemployed and had been since January 1971 without reenrollment in the retirement system and suspension of his retired status. Promptly thereafter McGarrity advised Chester Township in writing that Vliet was not entitled to maintain his dual status. He also testified than an employee in a non-Civil Service unit may be classified as a "temporary" for no more than one year for pension purposes. At the beginning of the second continuous year of employment he is deemed a permanent employee for pension purposes. See *N. J. A. C.* 17:2–2.4(c) which provides that an employee whose compulsory enrollment date is not fixed by sections (a) and (b)

---

\* \* \* may be considered a temporary employee by his employer for as long as a one-year period following the employee's date of hire, but if his employment continues into his second year, his compulsory enrollment date will be the first of the month following the com-

pletion of the equivalent of a working test period of four months within the second year of employment.[1]

The agency below, the Board of Trustees of PERS (Board), found that Vliet was not a "temporary employee" within the meaning of *N. J. S. A.* 43:15A–7(b) and that he was required to continue membership in PERS pursuant to *N. J. S. A.* 43:15A–57.2. Vliet was found to have all the indicia of a permanent employee in the two municipal positions. Contrary to the recommendation of the hearing examiner (who also found that Vliet was not a temporary employee), the board concluded that Vliet must repay all pension payments received between 1971 and 1974, plus normal contributions to PERS based upon his earnings in that period. The Board found that Vliet could not rely upon the advice received from PERS because his

[1]Apparently, the regulation became effective on December 18, 1972. See 5 *N. J. R.* 23(a) (1973); 4 *N. J. R.* 283(a) (1972). The regulation fixes dates for compulsory enrollment in PERS. The date for a new employee in a "local" government unit "not covered by civil service" is four months after the employee "originally accepted employment in a regular budgeted position." The full text of *N. J. A. C.* 17:2–2.4 is as follows:

17:2–2.4 Enrollment date

(a) A new appointee in the classified service shall be considered as beginning his service on the date of his regular appointment, and the compulsory enrollment date shall be fixed as the first of the month following the completion of the equivalent of a working test period of four months. If an applicant, an optional enrollee, fails to give the date on his enrollment application that he desires to enroll in the system, the applicant shall be enrolled as of the first of the month following the receipt of the enrollment application.

(b) An employee in the unclassified service or an elected position shall be considered as beginning service on the date of his original appointment, or the date when he assumed duties of the elective office, as the case may be.

1. For local employers not covered by civil service, a regular appointment shall constitute the date the employee originally accepted employment in a regular budgeted position.

2. The date of compulsory enrollment shall be the first of the month following the completion of the equivalent of a working test period of four months.

actual employment status was not fully disclosed in the correspondence with the Division of Pensions.

 We accept the finding of the Board that Vliet was not a temporary employee within the meaning of applicable law. That finding is supported by sufficient credible evidence and will not be disturbed here. *Mayflower Securities Co., Inc. v. Bureau of Securities*, 64 *N. J.* 85, 92–93 (1973); *Close v. Kordulak Bros.*, 44 *N. J.* 589, 598–599 (1965).

Not being a temporary employee, Vliet was required to en-roll, or re-enroll, in PERS. *N. J. S. A.* 43:15A–7 provides that membership in PERS shall include:

 &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

 b. Any person becoming an employee of the State or other em-ployer after January 2, 1955 and every veteran, other than those whose appointments are temporary or seasonal, becoming an em-ployee of the State or other employer after such date; * * *.2

 (c) An employee who does not meet the requirement for en-rollment cited in (a) and (b) of this section may be considered a temporary employee by his employer for as long as a one-year period following the employee's date of hire, but if his employ-ment continues into his second year, his compulsory enrollment date will be the first of the month following the completion of the equivalent of a working test period of four months within the second year of employment.

2This section has been interpreted in this case and generally to exclude temporary employees from membership in PERS. See *Re-port of the Special Committee to Study Public Pensions* (June 2, 1977), at 88. The Committee recommended that a person serving in a temporary position covered by the retirement system should be required to enroll in PERS "if such person completes one full year of employment on a continuing basis." At 90.

The sentence structure of *N. J. S. A.* 43:15A–7(b) suggests to us the intention not to exclude all temporary employees but only veterans who are temporary or seasonal employees. The phrase "other than those whose appointments are temporary or seasonal" appears to modify "every veteran," not "any person" who becomes an employee. However, *N. J. S. A.* 43:15A–75(b) clearly excludes any person in the employ of a county or municipality whose em-ployment is "temporary or seasonal," or whose annual salary or remuneration is less than $500.

As a person eligible for membership in PERS or whose membership in PERS is compulsory, Vliet could not receive his pension while continuing in employment as clerk of the board of adjustment and of the planning board of Chester Township. This is made clear by *N. J. S. A.* 43:15A–57.2, as follows:

> If a former member of the * * * retirement system, who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him eligible to be a member of the retirement system, * * * his retirement allowance * * * shall be canceled until he again retires.
>
> Such person shall be re-enrolled in the retirement system and shall contribute thereto at a rate based on his age at the time of re-enrollment. * * *
>
> Upon subsequent retirement of such member, * * * his former retirement allowance shall be reinstated * * * based on his former membership. In addition, he shall receive an additional retirement allowance, based on his subsequent service * * *.

Thus, the Board of Trustees properly concluded that Vliet's pension was not payable so long as he continued in employment in a position with Chester Township which was not temporary. This brings us, then, to the remedy imposed by the Board of Trustees.

Weighing equitable factors, the hearing examiner recommended that appellant should not be required to reimburse PERS for prior pension payments received, citing *Skulski v. Nolan,* 68 *N. J.* 179 (1975) and *Indursky v. Board of Trustees,* 137 *N. J. Super.* 335, 343 (App. Div. 1975). The equities are not all on Vliet's side, however. Had he advised the Division of Pensions of his exact employment status he could have received more specific advice. It does not seem reasonable for him to have relied on the fact that his employment was simply *termed* "temporary employ-

---

The interpretation of *N. J. S. A.* 43:15A–7(b) which we suggest has not been raised as an issue in these proceedings.

We have no need to pursue the matter further since either interpretation is fatal to appellant's position.

ment," although this is the literal reading of the Division of Pensions' letter to him dated January 22, 1971. But that letter went on to state, as did a previous letter, that his pension would be "adversely affected" if he accepted any employment which requires reenrollment in PERS.

While Vliet should not benefit from noncompliance with the law, we conclude that total reimbursement would be inequitable. *Cf. Indursky, supra.* It is unlikely that Vliet would have continued in part-time employment at $2,000 a year if he had known that he would have to give up a pension of approximately $5,300 a year. Knowing that he would have chosen his pension above part-time employment, we will require Vliet to pay to PERS all moneys earned by him while employed by Chester Township since January 1, 1971. This restores Vliet to full pension status as of that date, without earnings from Chester Township which would otherwise have interrupted his retirement benefits.

We add a note of caution. This remedy may not be applied in a future case. We do not intend to encourage employees to play heads-I-win-tails-you-lose with the Division of Pensions. This case should serve as some forewarning of the applicable law. Retirees cannot expect to find sanctuary in the designation "temporary employee," enabling them to benefit from retirement and public employment simultaneously. We note also that footnote 2 above suggests the need for further study by state officials and the Legislature of the status of temporary employees and their eligibility for membership in PERS.

We affirm the determination below, in part, and modify the reimbursement order as stated herein.