ROBERT E. GLADDEN, APPELLANT, v. BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 27, 1979—Decided December 12, 1979.

364

Before Judges MATTHEWS, ARD and POLOW.

*Robert E. Gladden,* appellant, argued the cause *pro se.*

*David I. Fox* argued the cause for respondents (*Fox* and *Fox,* attorneys).

*Erminie L. Conley,* Assistant Attorney General, argued the cause for John J. Degnan, Attorney General, intervenor.

The opinion of the court was delivered by

MATTHEWS, P. J. A. D.

This is an appeal from a determination of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denying an application by appellant for membership in PERS.

The facts are undisputed. Appellant, a World War II veteran, has continuously served as an employee of the Legislature since 1958. From 1958 to 1960 he served as Assistant to the Speaker of the General Assembly; from 1961 to 1974 he served as Assistant Secretary to the Senate except for the years 1966 and 1967 during which he served as Secretary of the Senate. In 1974 he was elected Secretary of the Senate and has continued to serve in that position since that time. In each of these positions he received an annual salary in excess of $500 which, pursuant to law, is paid semi-annually. *N.J.S.A.* 52:11–5.

In May 1977 appellant filed an application for enrollment in the Public Employees' Retirement System. Following an inquiry as to his eligibility for membership in PERS, the Board was advised by the Attorney General that under the governing statutes appellant was eligible for enrollment in the retirement system on the basis of his continuous permanent employment in the Legislature and that, by virtue of his veteran's status, he is mandatorily required to be enrolled retroactive to 1958.

Notwithstanding the legal opinion by the Attorney General, the Board in October 1977 determined that appellant was not eligible for enrollment. This denial was premised upon a regulation promulgated by the Board which requires payment to a public employee in all four calendar quarters as a condition for enrollment in the system. By letter dated February 2, 1978 the Board notified appellant of its decision, indicating that the decision was final and could be appealed to the Appellate Division.

Subsequently, the Attorney General requested the Board to reconsider its decision. The Board was advised that in the Attorney General's judgment there was no arguable basis on which the Board's decision could be defended. Despite the fact that the issue is solely one of statutory interpretation, involving neither a question of fact nor agency policy, the Board denied the Attorney General's request for a reconsideration. On March 9, 1978 a notice of appeal was filed by appellant. By letter dated July 12, 1978 the Attorney General reiterated to the Board that the issue involved was purely one of construction of the governing statutes; that the Attorney General's opinion on the legal issue was patently correct and binding on the Board, and that there was no arguable basis upon which the Board's decision could be defended in court. Accordingly, the Board was advised that the Attorney General would not provide it with legal representation in the courts at public expense and that a motion to intervene in support of the Attorney General's opinion would be filed.

Thereafter, on July 21, 1978 a motion by the Attorney General to intervene on his own behalf as an appellant was filed. On August 1, 1978 the Board voted to retain David I. Fox, Esq.,

> . . . to represent the Board of Trustees, PERS in all phases of the Gladden matter and, to that end, to do whatever is necessary to defend the Gladden appeal, to defend on the Attorney General's motion to intervene on behalf of the appellant, to compel the State to pay for and provide defense, and to take whatever legal action he deems necessary.

On August 7, 1978 the firm of Fox and Fox filed a notice of appeal from the Attorney General's July 12, 1978 decision not to afford representation to the Board. On August 11, 1978 the firm filed a motion in this cause seeking an order from this court allowing it to represent the Board, denying the Attorney General's motion to intervene and ordering that the firm of Fox and Fox be paid by the State for its counsel fees. In effect, we were requested to designate the firm of Fox and Fox as special counsel to the Board. That motion was denied on August 23, 1978. At the same time the Attorney General was granted leave to participate as *amicus curiae*. We also permitted the individual members of the Board to intervene on their own behalf.[1] On September 13, 1978 Fox and Fox filed a motion in the Supreme Court for leave to appeal our order denying their motion for designation as special counsel for the Board at public expense. That motion was denied on January 30, 1979.

There can be no question that a refusal of a state agency to abide by a valid state law is a fundamental concern of the Attorney General both in his capacity and responsibility as

---

[1] Eight of the trustees intervened as individuals by letter submitted by counsel on September 18, 1978. They included Trustees Crupi, Evans, McMenamen, Orecchio, Russen, Wagner, Piotroski and Macasek. References in the opinion to respondents are limited to these intervenors.

adviser to the agency and in his capacity and responsibility as protector of the public. Since the efforts of the Attorney General informally to convince the Board to abide by the statutory scheme and grant appellant's mandatory enrollment have met with not only unacceptance but defiance, the Attorney General has appeared "to preserve his function and responsibility and to protect the public from arbitrary and illegal action."

Respondents have raised in several preliminary arguments the contention that this case is not properly before this court.

It is first argued that this appeal was not timely filed and thus is barred. The essence of the argument is that the appeal should have been filed within 45 days of the October 19, 1977 decision rather than from the date of the letter of February 2, 1978. Respondents contend that appellant had actual notice of the decision in October 1977, as at that time the Board believed the Deputy Attorney General was acting on behalf of appellant, and thus notice to the Deputy Attorney General was notice to appellant. Since actual notice was received on October 19, 1979, appeal should have been from that date.

■ This argument must fail for several reasons. First, there is nothing in the record to indicate that the Attorney General received written notification of the October 19, 1977 decision. Respondents' appendix contains a memorandum from the secretary of the Board to the Assistant Director of Pensions notifying the Assistant Director of the Board's decision. Written notification of the Board's decision to the applicant or his legal representative is required by *N.J.A.C.* 17:2–1.7. Secondly, the letter of February 2 included the statement that appellant had 45 days *"from the date of this letter"* to appeal the Board's decision.

Respondents next contend that appellant has not properly exhausted his administrative remedies and this case must be remanded for an agency hearing pursuant to *N.J.A.C.* 17:2–1.7.

The requirement of administrative exhaustion

. . . "is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." *Brunetti v. Borough of New Milford*, 68 *N.J.* 576, 588 (1975) . . . In this respect the rule ensures that claims will be heard, as a preliminary matter, by the body having expertise in the area. This is particularly important where the *ultimate decision rests upon factual determinations* lying within the expertise of the agency or where agency interpretations of relevant statutes or regulations are desirable. [Emphasis supplied] [*Paterson Redevelop. Agency v. Schulman*, 78 *N.J.* 378, 386–387 (1979)]

Respondents argue that an administrative hearing is necessary to determine if appellant's employment is temporary, seasonal or mere "minor additional part-time employment"; whether appellant has waived membership in PERS; the amount of back payments necessary and by whom the payments are to be made, and whether *N.J.A.C.* 17:2–2.3(a)4 should be relaxed or dispensed with in this case.

The application of the doctrine of administrative exhaustion would serve no purpose in this case. First, the respondents have accepted (for the greatest part) appellant's stipulation of facts, thus leading appellant to believe there was no factual dispute. (We find there is none). Secondly, the actual issue in this case is the validity of *N.J.A.C.* 17:2–2.3(a)4 as applied to appellant. That rule requires four quarterly payments to be eligible for membership in PERS. Appellant is paid two times a year. This fact is not disputed and, accordingly, the strict application of the administrative rule obviates the need to make a factual determination on any other issue. Respondents have undisputedly declined to relax the rule in appellant's case. Thus the issue before us is a legal issue concerning the Board's interpretation of the Pension Act, not a factual issue that calls for the Board's expertise.

Respondents also contend that this claim is barred by laches. Laches is a defense when there is delay, unexplained

and inexcusable, in enforcing a known right, and prejudice has resulted to the other party because of that delay. The policy behind the doctrine is the discouragement of stale claims. *Flammia v. Maller,* 66 *N.J.Super.* 440, 453–454 (App.Div.1961). The defense is not available in this case. Although no reason has been advanced for appellant's failure to apply for a pension 20 years ago, his claim is not stale. This case involves a legal question that not only currently affects appellant but other employees of the State Legislature.

■ Respondents also express concern over the cost to the State (here the Legislature as employer) of a retroactive membership for appellant. While such concerns in the area of pensions are always a matter to be considered, they cannot be used to avoid the clear requirements of the statute.

■ Nor do we find that appellant has waived his claim as respondents contend. " 'Waiver' is the intentional relinquishment of a known right." *West Jersey Title, etc., Co. v. Industrial Trust Co.,* 27 *N.J.* 144, 152 (1958). Respondents have not shown that appellant knew of his right to join the pension system. Furthermore, as we have noted, there is a current issue that can be litigated: the question of appellant's current eligibility for membership in PERS.

We conclude that this appeal is properly before us.

*N.J.S.A.* 43:15A–7 contains the general membership provisions of the Public Employees' Retirement System. It provides (in part) that membership "shall include":

b. Any person becoming an employee of the State or other employer after January 2, 1955 and every veteran, other than those whose appointments are temporary or seasonal, becoming an employee of the State or other employer after such date . . .

d. Membership in the retirement system shall be optional for elected officials other than veterans. . . . State employees who become members of any other retirement system supported wholly or partly by the State as a condition of employment shall not be eligible to membership in this retirement system.

> Notwithstanding any other law to the contrary all other persons accepting employment in the service of the State shall be required to enroll in the retirement system as a condition of their employment, regardless of age. No person in employment, office or position, for which the annual salary or remuneration is fixed at less than $500.00, shall be eligible to become a member of the retirement system. . . .

Under this legislative scheme, all state and local public employees are eligible for PERS membership *except* temporary or seasonal employees, members of other governmental retirement systems and employees whose annual salary is fixed at less than $500. For all veteran employees appointed after January 2, 1955, enrollment is mandatory. There is no dispute that appellant satisfies these membership criteria. As a veteran, he was, therefore, mandatorily required to be enrolled at the time of his initial appointment in 1958.

The legislative positions held by appellant throughout his lengthy employment with the Legislature are statutorily authorized. *N.J.S.A.* 52:11–1 to 5. See *N.J.Const.* (1947) Art. IV, § IV, par. 3. *N.J.S.A.* 52:11–3 provides in part:

> The officers and employees of the house of assembly, except the presiding officer, shall be those named herein, and no others, who shall severally receive the annual compensation specified herein, which compensation shall be in full payment of all their services, subject to the deductions provided by section 52:11–4 of this title:
>
> .     .     .     .     .     .     .     .
>
> Speaker's assistant secretary, five hundred dollars.
>
> .     .     .     .     .     .     .     .

*N.J.S.A.* 52:11–2 provides in part:

> The officers and employees of the senate, other than the presiding officer, shall be those named herein, and no others, who shall severally receive the annual compensation specified herein, which compensation shall be in full payment of all their services, subject to the deductions provided by section 52:11–4 of this title:
>
> Secretary of the senate, twenty-five hundred dollars. Assistant secretary of the senate, twelve hundred dollars.

*N.J.S.A.* 52:11–5 provides:

> The officers and employees of the senate and house of assembly, whose compensation is fixed by sections 52:11–2 and 52:11–3 of this title, may draw

from the treasury, at the opening of the regular annual session of the legislature, a sum not to exceed one-half of their fixed compensation, and the balance thereof, less any deductions that may have been charged against them, shall be paid within ten days after the final adjournment of the regular session.

In addition, *N.J.S.A.* 52:11–4 requires, except for specifically enumerated officers and employees, the maintenance of attendance records with a proportionate deduction in salary of the officer or employee for each day of unexcused absences from a legislative session.

■ It is clear from the above-quoted provisions of *Title* 52 that the legislative positions held by appellant are regular state employment positions with an annual salary of at least $500. A full year of service while the Legislature is in session is required as evidenced by the provision for attendance records and proportionate salary deductions for unexcused absences. Accordingly, the positions are within the eligibility provisions of *N.J.S.A.* 43:15A–7 as regular state employment positions and are not within the explicit exclusions for temporary or seasonal employees or employees whose salary is less than $500 a year.

In interpreting the restriction against the enrollment of temporary and seasonal employees, the Board, under its rulemaking authority granted by *N.J.S.A.* 43:15A–17, promulgated *N.J.A.C.* 17:2–2.3. This rule states that among those ineligible for membership in the system is "[a]ny employee who is not paid in each of the four calendar quarters, other than elected officials." *N.J.A.C.* 17:2–2.3(a)(4).

Because of this rule, appellant was declared ineligible for membership in PERS since he is paid twice a year.

Respondents argues that *N.J.A.C.* 17:2–2.3(a)(4) is essential to distinguish between temporary and permanent employees. It is contended that without the rule it would be possible for someone who only worked one month and yet was paid $1,000 to enroll in the system. Thus, they claim, the rule must be given administrative deference and upheld by the courts.

While it is true that an agency's construction of a statute administered by it over a period of years without legislative interference will under appropriate circumstances be granted great weight as evidence of its conformity with legislative intent, *Malone v. Fender,* 80 *N.J.* 129, 137 (1979), it is equally true that long continued error does not make valid what is clearly invalid. *Kamienski v. Board of Mortuary Science,* 80 *N.J.Super.* 366, 370 (App.Div.1963).

In most cases the rule here under review may well be necessary to distinguish a temporary or seasonal employee from a permanent employee. However, the rule is here applied to bar an applicant otherwise statutorily eligible for admission. "It is well-settled that in the execution of its rule-making power a state agency may not go beyond declared statutory policy." *In re St. Bd. of Dentistry Increase in Fees,* 166 *N.J.Super.* 219, 223 (App.Div.1979).

Quarterly payment of an annual salary for PERS membership is not a statutory prerequisite. Consequently, where an employee, such as appellant, meets the statutory criteria, the rule relied on by the Board cannot be applied, particularly so, as is the case here, where the payment intervals of the applicant's salary is fixed by statute at twice a year.

Appellant clearly qualifies for membership in PERS since he meets the statutory requirements. Twenty years of service to the State Legislature is neither temporary nor seasonal. The fact that he performed only part-time work has no effect on his eligibility. *Vliet v. Public Empl. Retirem. Sys. Trustee Bd.,* 156 *N.J.Super.* 83 (App.Div.1978). Since he is a veteran, he must be enrolled retroactive to 1958.

Reversed and remanded to the Board for the admission of appellant into PERS.