**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3151-18T3

ELLEN SCHWARTZ,

    Plaintiff-Appellant,

v.

DEPARTMENT OF TREASURY,
DIVISION OF PENSIONS AND
BENEFITS,

    Defendant-Respondent.

_____

Submitted April 20, 2020 – Decided July 16, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Board of Trustees, Teachers' Pension and Annuity Fund, Department of the Treasury, TPAF No. 1-10-158521.

Caruso Smith Picini PC, attorneys for appellant (Timothy Richard. Smith, of counsel; Sara B. Liebman, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

General, of counsel; Austin J. Edwards, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Ellen Schwartz appeals from the Board of Trustees, (Board) Teachers' Pension and Annuity Fund's (TPAF) February 11, 2019 final administrative determination requiring plaintiff to repay $32,431.56 in pension benefits. The Board required the repayment after it determined her retirement from the Elizabeth Board of Education (EBOE) did not qualify as a "bona fide severance from employment" since she returned to work for the EBOE within 180 days of her retirement, in contravention of N.J.A.C. 17:1-17.14(a)(2)(iv).

On appeal, plaintiff argues that the matter should have been transferred to the Office of Administrative Law (OAL) for a hearing because there were factual disputes that needed to be resolved. She also contends that she should not be forced to repay the benefits because she returned to work as a substitute teacher through a placement by a third-party employer, Source4Teachers (S4T). Moreover, even if she did violate the regulation prohibiting returning to work, it was unintentional. We affirm because plaintiff failed to establish that a factual dispute existed or that the Board's decision was arbitrary, capricious, or unreasonable.

A-3151-18T3

The material facts are undisputed. The EBOE employed plaintiff as a teacher until May 9, 2014, when it informed plaintiff that her employment would be terminated, effective June 30, 2014, due to a reduction in force. On May 31, 2015, plaintiff filed for retirement and at its regular July 2, 2015 meeting, the Board approved plaintiff's retirement, effective June 1, 2015. In its letter notifying plaintiff that her retirement was approved, the Board cautioned plaintiff that if she was to return to public employment following her retirement, she needed to notify the Board's Office of Client Services "immediately."

On April 2, 2015, plaintiff began working as a substitute teacher for S4T, which assigned her to work for the EBOE starting on October 6, 2015 through June 21, 2016. Thereafter, the EBOE directly reemployed plaintiff as a full-time teacher for the term beginning in September 2016. Plaintiff notified the Division of Pensions and Benefits (Division) about her reemployment in a October 1, 2016 letter that also requested that her retirement be stopped, and advised that she understood she was required to repay the distributed retirement benefits she received for September and October 2016.

Upon receipt of plaintiff's letter, the Division's external auditor unit (EAU) began a review to determine whether plaintiff's post-retirement employment complied with "all applicable pension laws." On October 6, 2016,

a member of the EAU contacted plaintiff by telephone to investigate plaintiff's claims and verify her post-retirement employment status. During a phone call with the EAU, plaintiff confirmed that she worked for EBOE through S4T after her retirement. According to plaintiff, S4T told her that employment with S4T would not adversely affect any pre-existing relationships.

The Division had no records indicating plaintiff ever contacted it to ascertain whether employment with the EBOE, through S4T, would compromise plaintiff's retirement benefits.

Following a verification from the EBOE of her employment status, plaintiff was advised that she would be re-enrolled in the TPAF, her retirement benefits would be suspended, and defendant would initiate a recovery of all overpaid retirement benefits. Following a further review of the documents submitted by the EBOE, the EAU wrote to plaintiff on May 14, 2018 to advise her in detail of the Division's determination that her June 1, 2015 retirement did not constitute a bona fide severance from employment, given that she returned to work for the EBOE within 180 days of retirement.

The letter recounted: when plaintiff retired, when her employment was set to be terminated by the EBOE, her earned wage totals from S4T, and various regulations that she was required to meet upon retiring before stating:

4

Based on information provided by your employer, EBOE, the Division has determined that your TPAF retirement effective June 1, 2015 was not bona fide and that you remained an active member of TPAF since you did not separate from employment with the [EBOE] as required by the provisions of N.J.A.C. 17:1-17.14. The Division found that you did not have a bona fide severance from employment because you returned to the same employer (EBOE) that you retired from through a third[-]party employer (S4T) within 180 days of your retirement date of June 1, 2015. As a non[-]bona fide retiree, you were not entitled to the retirement benefits you have received since your retirement of June 1, 2015.

Plaintiff appealed the Division's determination to the Board. On August 15, 2018, the Board sent plaintiff another detailed letter explaining that it found plaintiff violated N.J.A.C. 17:1-17.14 by returning to work for the EBOE within 180 days of her June 1, 2015 retirement. The Board found that plaintiff's retirement was not bona fide, "essentially for the reasons outlined by the Division's May 14, 2018, letter." As a non-bona fide retiree, the Board determined plaintiff "was not entitled to the retirement benefits she received since her retirement of June 1, 2015."

The Board concluded that plaintiff was required to repay "all retirement benefits received" from the TPAF from July 1, 2015 to March 1, 2017, totaling

$32,431.56.[1]   Of that total amount, the Board found that plaintiff was not contesting the repayment of pension checks she received from October 1, 2016 to March 1, 2017, totaling $9266.16, which she received after she returned to full-time employment with the EBOE as a teacher beginning September 1, 2016.

Thereafter, plaintiff requested a hearing as to the Board's determination. The Board denied the request on January 17, 2019, "essentially for the reasons set forth in the Board's denial letter dated August 15, 2018." On February 11, 2019, the Board issued its "Final Administrative Determination," setting forth its findings of fact that essentially described the noted history of plaintiff's employment, retirement, and re-employment by the EBOE, indirectly through S4T and then directly in September 2016. The Board described the issue as "whether [plaintiff] observed a 'bona fide severance from employment' because she returned to the EBOE within 180 days of her retirement in violation of N.J.A.C. 17:1-17.14(a)(2)(iv)." In concluding that plaintiff violated N.J.A.C. 17:1-17.14, the Board stated that "[i]n order for [plaintiff's] retirement to be bona fide, it would require that her employment be severed for a minimum

---

[1] Defendant did not suspend plaintiff's retirement benefits until after March 1, 2017.

period of 180 days subsequent to her June 1, 2015 retirement, not the June 30, 2014 date." This appeal followed.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). In our review, we presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient

credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). However, we review de novo an agency's interpretation of a statute or case law. Russo, 206 N.J. at 27.

We turn first to plaintiff's contention that a factual dispute required the referral of the matter to the OAL. Specifically, plaintiff argues that in following the Division's "unsupported determination that [plaintiff's] employment with [S4T] constituted employment with the EBOE," the Board "erroneously ignored the clear factual dispute; that is [plaintiff] maintains that she was employed by a private employer and not by the EBOE." According to plaintiff, since "the Board failed to engage in any factual analysis, there [was] no basis for its finding that [plaintiff's] retirement was not bona fide." We disagree as we conclude the matter presented only a legal issue under what were undisputed facts.

Turning to plaintiff's contention that the Board's legal conclusion was incorrect because she was an employee of S4T rather than the EBOE when she returned to work, we disagree and find from our de novo review that the Board's

legal determination was correct.  In reaching that conclusion, we are mindful of the public policies that must guide our review.  First, "[a]s a form of legislation aimed at remedying a social problem, pension statutes 'should be liberally construed and administered in favor of the persons intended to be benefited.'" Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 351 (App. Div. 2010) (quoting Klumb v. Bd. of Educ. of Manalapan–Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 34 (2009)).  However, second, "pension[] statutes are to be construed so as to preserve the fiscal integrity of the pension funds." DiMaria v. Bd. of Trs., Pub. Emps.' Ret. Sys., 225 N.J. Super. 341, 354 (App. Div. 1988).

With those guiding principles in mind we turn to the Board's legal conclusion.  The Board, relying exclusively on N.J.A.C. 17:1-17.14(a)(2)(iv), found that plaintiff did not have a bona fide severance from employment after she returned to employment with the EBOE within 180 days of her retirement, and was therefore required to repay the retirement benefits that the TPAF paid to her from July 1, 2015 to March 1, 2017.  We agree.

Under the Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1 to -93, when a former member of the TPAF, who has received a retirement allowance "for any cause other than disability, becomes employed again in a

9

position which makes him eligible to be a member of the retirement system, his

retirement allowance . . . shall be canceled until he again retires."   N.J.S.A.

18A:66-53.2(a).   Under N.J.A.C. 17:1-17.14(c), defined benefit plans[2] are

required to pay retirement benefits to a member "only when there is a bona fide

severance from employment" unless the member is of normal retirement age

under the plan and the plan provides for distribution of benefits without a bona

fide severance from employment.

> "Bona fide severance from employment" means a complete termination of the employee's employment relationship with the employer for a period of at least 180 days.  The following <u>does not constitute a complete termination of the employee's relationship with the employer</u>:
>
> i.  <u>Employment or reemployment in a part-time position</u>;
>
> ii.  Employment or reemployment in a position that is not covered by the Defined Benefit Plan;
>
> iii.  A change in title;
>
> iv.  <u>Employment or reemployment as a contract employee, a leased employee, or an independent contractor</u>; or
>
> v.  Termination of employment with a pre-arranged agreement for reemployment.

---

[2]  The TPAF is one of seven defined benefit plans.  N.J.A.C. 17:1-17.14(a)(1).

Federal Internal Revenue Service factors[3] shall be used as guidance in determining whether an employment relationship exists. A mandatory retirement shall be treated as a bona fide severance from employment.

[N.J.A.C. 17:1-17.14(a)(2) (emphasis added).]

According to N.J.A.C. 17:1-17.14(e),

if an employee who has applied and commenced a retirement benefit is reemployed by the same employer . . . within fewer than 180 days after the specified date of termination, the Division may, but is not required to, do the following:

1. Require the employee and employer to again certify that there was no prearranged agreement for the reemployment; and

2. Investigate the circumstances of the reemployment to determine if there was, in fact a bona fide severance from employment.

If, after investigation, the Division finds there was no bona fide severance from employment, the Division "may revoke the retirement of the member and require

---

[3] Those factors are used as guidance in determining whether "an employment relationship exists," N.J.A.C. 17:1-17.14(a)(2), and were "designed to determine whether a person was an independent contractor or an employee." Francois, 415 N.J. Super. at 351. Contrary to plaintiff's contention on appeal, the federal factors were not triggered because there was no dispute that she worked for the EBOE as a contract employee or an independent contractor.

A-3151-18T3

the repayment of benefits in order to protect the qualified status of the defined benefit plans." N.J.A.C. 17:1-17.14(f).

Here, the Board correctly found that plaintiff's retirement did not qualify as a bona fide severance from employment under the applicable regulations. Plaintiff's status an employee of S4T rather than the EBOE, is inconsequential. N.J.A.C. 17:1-17.14(a)(2) states that "[e]mployment or reemployment as a contract employee, a leased employee, or an independent contractor" "does not constitute a complete termination of the employee's relationship with the employer." (Emphasis added). It is undisputed that within 180 days after her retirement, plaintiff began working, through S4T, as a contract or leased employee, for the EBOE as a substitute teacher.

The Board's decision was not arbitrary, capricious, or unreasonable in light of the clear language of the regulations and the facts surrounding plaintiff's re-employment. To hold otherwise would create a simple method for retirees from a school system to continue their work while not of retirement age while simultaneously collecting their pension and a salary, which would be contrary to the polices governing public pensions. See Francois, 415 N.J. Super. at 350 ("An inappropriate allowance of benefits tends 'to place a greater strain on the financial integrity of the fund in question and its future availability for those

persons who are truly eligible for such benefits.'" (quoting Smith v. State, 309 N.J. Super. 209, 215 (App. Div. 2007))).

Plaintiff's final argument addresses the Board's requirement for repayment. She contends that even if she violated N.J.A.C. 17:1-17.14(a)(2)(iv), any violation was unintentional and therefore she should not be responsible for reimbursement of the full amount of the pension benefits she received. Specifically, plaintiff contends that she should be required to repay $9179.71, calculated by summing her "gross pay" from October 2015 to July 16 when she worked for the EBOE through S4T.

When determining the amount of the retirement allowance to be repaid, factors pertinent to the equities in the case should be considered. They include whether the retiree reasonably relied on representations in selecting a course of action; the diligence of the agency action in uncovering improper payment of retirement allowances; evidence of manipulation by the retiree and his or employer; and the proportionality of an order requiring repayment where non-compliance is attributable to a mistake rather than manipulation of the pension system. See, e.g., Skulski v. Nolan, 68 N.J. 179, 196 (1975); Vliet v. Bd. of Trs., Pub. Emps.' Ret. Sys., 156 N.J. Super. 83, 90 (App. Div. 1978); Indursky v. Bd. of Trs., Pub. Emps.' Ret. Sys., 137 N.J. Super. 335, 343 (App. Div. 1975).

However, reasonable reliance does not include relying upon outside advice when making post-retirement decisions, as the retiree's former employer may offer "more specific advice" on the effects of post-retirement employment on that retiree's pension as compared to an outsider. Vliet, 156 N.J. Super. at 89-90.

The Board determined that plaintiff owed $32,431.56 since plaintiff received her first retirement benefits check on July 1, 2015 and her final check on March 1, 2017. Plaintiff acknowledged, and has not contested, that she is required to repay $9266.16, which represents the total of six pension checks she received from October 1, 2016 to March 1, 2017 after she returned to full-time employment with the EBOE. Also, it is undisputed that plaintiff did not manipulate the TPAF in any way and the Division conducted an immediate investigation upon notification of plaintiff's true employment status.

In considering the equities, we find no error in the Board's decision that it was unreasonable for plaintiff to rely on representations from S4T that her pension would not be adversely affected by being placed with the EBOE. As evidenced by her contact with the Board after her full-time direct re-employment, she was aware that her pension could be impacted by her post-retirement employment. And, she was also evidently concerned about that impact when she obtained advice from S4T about working through it for the

14

EBOE, yet she provided no explanation for why she did not contact the Division to determine exactly what the impact of her placement would be, as instructed in the letter approving her retirement.

Balancing these equities, the Board was correct in determining that plaintiff was required to repay the full $32,431.56. Although her non-compliance with the regulations was seemingly unintentional, there is no reason why plaintiff should realize a windfall at the TPAF's expense based on her own actions. Under the circumstances, we have no cause to disturb the Board's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3151-18T3