**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2450-19

RORY MARADONNA,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued October 14, 2021 — Decided October 27, 2021

Before Judges Haas and Mawla.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. x-xx-xxx493.

Richard A. Friedman argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC, attorneys; Richard A. Friedman, of counsel and on the briefs; Kathleen Naprstek Cerisano, on the briefs).

Alison Keating, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Alison
Keating, on the brief).

PER CURIAM

Appellant Rory Maradonna appeals from a January 16, 2020, final agency decision by respondent Board of Trustees (Board) of the Public Employees' Retirement System (PERS), finding his retirement was not bona fide and requiring him to reimburse PERS for the retirement benefits he received. We affirm.

Maradonna began working at Rutgers University in 1974. In 1986, he signed an Election of Retirement Coverage form waiving participation in the Alternate Benefit Program (ABP) and remaining in the PERS. In 2007, Maradonna's position was eliminated, and he applied for retirement benefits effective March 1, 2008.

On March 7, 2008, Maradonna's wife was laid off. Maradonna communicated with Rutgers officials about taking another position at the university. Prior to accepting the new position, he spoke to Rutgers human resources employees and consulted the Division of Pension and Benefits (Division) website to ensure his reemployment would not affect his retirement benefits. According to Maradonna, the human resources employees assured him he could accept the new position and receive PERS benefits so long as he did

not enroll in the ABP and waited thirty days after his date of retirement. Based on those conversations, and because the new position was listed as an ABP covered position, Maradonna concluded he could accept the job. He was unaware the waiver he signed would convert a post-retirement ABP-covered position into a PERS position. Maradonna began his new job on April 2, 2008.

Unaware of Maradonna's new employment, the Board approved his retirement application on May 21, 2008. His first PERS pension check was issued in April for the month of March. The Division sent him a letter stating:

> In accordance with law, you have until thirty days after (A) the effective date of your retirement, or (B) the date your retirement was approved by the Board of Trustees, whichever is the later date, to make any changes to your retirement. Also, your first check cannot be mailed until after this thirty[-]day period. . . .
>
> You should expect to be reenrolled in the PERS if you accept employment after retirement with the State or any of the local participating public employers in a PERS covered position and your total salary from all public employment exceeds $15,000 in a calendar year.
>
> If you return to public employment following your retirement, you must notify our Office of Client Services immediately . . . .

In November 2011, the Division began investigating after Maradonna's name appeared on an exception list from the Department of Labor and

3

Workforce Development, indicating his earnings exceeded the statutory minimum annual salary of $15,000. Based on its investigation, the Division concluded Maradonna's retirement was not bona fide and notified him accordingly in September 2013. The Division noted Maradonna did not wait thirty days after the Board approved of his retirement before returning to work. Therefore, Maradonna was never effectively retired.

The Division determined it was entitled to contributions and reimbursement of all retirement benefits Maradonna received from March 1, 2008, through a projected date of October 1, 2013, totaling $510,780.10. Maradonna appealed the Division's findings to the Board. He remained employed in his new position.

The Board affirmed. Maradonna appealed and the matter was referred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). The ALJ considered testimony from Maradonna and a Division auditor and found Maradonna "liable for repayment of the retirement benefits he has received and for pension contributions on the salary he has earned during his improper post-retirement employment." The ALJ found Maradonna was not "effectively retired" as of March 1, 2008, but instead "continued an active PERS membership, as provided by the waiver he signed in 1986." Accordingly, the

ALJ determined Maradonna's retirement should be cancelled, and he should be reenrolled in PERS.

However, the ALJ determined Maradonna was entitled to an equitable remedy to reduce the amount he was required to reimburse PERS. The ALJ reasoned although

> Maradonna should have spoken with state pension authorities before accepting post-retirement employment[. . . and] knew he should have spoken with the Division, and not merely rel[ied] on the advice of Rutgers, [. . . there were] other equitable factors weighing in favor of Maradonna includ[ing] the considerable length of time the Division took to inform Maradonna of his ineffective retirement.

The ALJ found the Division's five-and-one-half-year delay in contacting Maradonna "support[ed] a finding that the Division did not act diligently in uncovering the impropriety of Maradonna's reemployment." The ALJ also reasoned "the financial impact repayment would have on [Maradonna] and the length of his honorable public service" favored an equitable remedy.

Therefore, the ALJ limited Maradonna's reimbursement liability to "the salary he earned from April 1, 2008, to November 22, 2011, the date on which the Division notified Rutgers of the Division's audit of Maradonna's reemployment." The ALJ also determined Maradonna should have five years to repay PERS given the considerable sum owed.

A-2450-19

Both parties filed exceptions to the ALJ's decision. The Board issued a final determination adopting the ALJ's factual findings and legal conclusions that: Maradonna's retirement should be cancelled; he should be reenrolled in PERS; and he is liable for reimbursing PERS for the benefits and pension contributions he received during his post-retirement employment. However, the Board rejected the ALJ's application of an equitable remedy.

The Board found as follows:

> While Maradonna never severed service with Rutgers to become eligible for a retirement benefit, even if he had, his return to employment would have required his re-enrollment in PERS pursuant to N.J.S.A. 43:15A-57.2, which states, in pertinent part:
>
> > a. Except as provided in subsections b. and c. of this section, if a former member of the [PERS], who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him eligible to be a member of the [PERS], his retirement allowance . . . shall be canceled until he again retires.
> >
> > Such person shall be re-enrolled in the [PERS] and shall contribute thereto at a rate based on his age at the time of re-enrollment. . . .
> >
> > . . . .

b.    The cancellation, re-enrollment, and additional retirement allowance provisions of subsection a. of this section shall not apply to a former member of the [PERS] who, after having been granted a retirement allowance, becomes employed again by: (1) an employer or employers in a position or positions for which the aggregate compensation does not exceed $10,000 per year . . . .

[Ibid.]

Our courts have long noted that "[T]he effect of the statute is that one who has begun receiving pension benefits . . . may not continue receiving those benefits 'while continuing in employment' in the same position or in any other position requiring PERS membership." Stevens v. Bd. of Trs., Pub. [Emps.] Ret. Sys., 309 N.J. Super. 300, 303 (App. Div. 1998) (quoting [Vliet v. Bd. of Trs., Pub. Emps. Ret. Sys., 156 N.J. Super. 83, 89 (App. Div. 1978))].    "The purpose is to prevent professionals from manipulating the pension system by working part-time for governmental agencies while receiving a public pension."  Ibid.  Certainly, the same principles would apply with respect to full-time employment which exceeds the member's pension benefit.

Maradonna's earnings greatly exceeded the salary exemption provided for in N.J.S.A. 43:15A-57.2(b). Thus, this was not the case of a member who missed compliance with the return to employment rules by a few days, and even if Maradonna waited until thirty days after his retirement was approved on May 21, 2008, the statute requires that his retirement would be cancelled and he would be reenrolled in the PERS as he

7

accepted employment in a position governed by the PERS.

[(first six alterations in original).]

The Board denied Maradonna equitable relief because he "continued to be in violation of PERS rules for years, even after being informed of the Division's investigation and its finding that he was not in compliance with the PERS return to work rules" and such violations are "exactly what the return to employment statutes and regulations are designed to prevent." The Board added that equitable remedies were only afforded in other cases where "there was no rationale as to why each of the members would have placed their pension at risk in order to return to employment and earn a salary much lower than their pension benefit." The Board concluded "Maradonna's annual salary exceeded his annual pension benefit and there is no basis upon which to conclude that he would have declined the more lucrative employment with Rutgers in favor of receiving his PERS retirement benefits, especially in light of his wife's loss of employment."

The Board concluded an equitable remedy cannot apply "where the member expects to 'benefit from retirement and public employment simultaneously' . . ." It noted an equitable remedy would "provide[] Maradonna with a windfall" at the expense of PERS. The Board ordered Maradonna to

reimburse the entire sum of pension benefits he received during his post-retirement employment.

Maradonna raises the following points on appeal:

> [I.] THE PERS BOARD'S DETERMINATION THAT [MARADONNA] CONTINUED AS AN ACTIVE PERS MEMBER FOLLOWING HIS RETIREMENT AND THAT HE MUST RETURN ALL OF THE RETIREMENT BENEFITS HE RECEIVED IS NOT SUPPORTED BY THE FACTS AND APPLICABLE LAW AND MUST BE REVERSED.
>
> . . . .
>
> > [A]. THE RE-ENROLLMENT PROVISIONS OF N.J.S.A. 43:15A-57.2 DO NOT APPLY TO [MARADONNA'S] POST-RETIREMENT EMPLOYMENT, AS THAT EMPLOYMENT IS IN A POSITION COVERED BY THE [ABP].
> >
> > [B]. THE ELECTION OF RETIREMENT COVERAGE FORM EXECUTED BY [MARADONNA] DECADES AGO DOES NOT MEET THE LEGAL REQUIREMENTS OF A WAIVER AND DOES NOT CONVERT HIS POST-RETIREMENT POSITION FROM AN ABP POSITION TO A PERS POSITION.
> >
> > [C]. THE PERS BOARD'S REFUSAL TO CONSIDER AND APPLY THE ALJ'S FACTUAL FINDINGS AND CREDIBILITY DETERMINATIONS AND ORDER AN EQUITABLE REMEDY IS ARBITRARY, CAPRICIOUS, AND UNREASONABLE.

[D]. THE ALJ AND PERS BOARD MADE FACTUAL ERRORS WITH REGARD TO THE CALCULATION OF PENSION PAYMENTS RECEIVED BY [MARADONNA] THAT NEGATIVELY IMPACT A REMEDY IN THIS MATTER.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 579-80). The challenging party has the burden of proving an agency action is arbitrary, capricious, or unreasonable. Bueno v. Bd. of Trs. of the Tchrs. Pension & Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that '[a]n administrative

10

agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)).

We affirm the Board's decision because it is supported by the substantial credible evidence in the record. R. 2:11-3(e)(1)(D). We add the following comments.

The Board has "authority to apply equitable principles to provide a remedy when justice so demands, provided the power is used rarely and sparingly, and does no harm to the overall pension scheme." Sellers v. Bd. of Trs. of the Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 62 (App. Div. 2008). This is because the Board "owes a fiduciary duty to its members to protect the financial integrity of the fund." Francois v. Bd. of Trs., Pub. Emps. Ret. Sys., 415 N.J. Super. 335, 357 (App. Div. 2010) (citing Mount v. Trs. of Pub. Emps. Ret. Sys., 133 N.J. Super. 72, 86 (App. Div. 1975)). The Board's duty includes safeguarding against "the dangers of manipulation of the pension system . . . and . . . preserv[ing] the fiscal integrity of the PERS by vigilantly guarding against abuses." Mastro v. Bd. of Trs., Pub. Emps. Ret. Sys., 266 N.J. Super. 445, 456 (App. Div. 1993).

For these reasons, the Board's denial of an equitable remedy was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2450-19